[L. A. No. 5772. In Bank.—August 13, 1920.]

SOUTHERN PACIFIC LAND COMPANY (a Corporation), Appellant, v. THE COUNTY OF SAN DIEGO, Respondent.

[1] TAXATION — INEQUALITY OF VALUATION — RECOVERY OF TAXES — PLEADING — SUFFICIENCY OF COMPLAINT.—In an action brought under section 3819 of the Political Code to recover taxes paid under protest, the complaint states a cause of action, as against a general demurrer, where it substantially charges that the property of plaintiff was assessed at nearly twice its value, while the other property in the county was assessed, in pursuance of a systematic, willful, and intentional scheme to do so, at not to exceed twenty-five per cent of its real value, and that all this was shown to the board of equalization by evidence without substantial contradiction or conflict, and that the board, with full knowledge of such facts and without regard to the same and in disregard of the evidence, arbitrarily denied plaintiff's application for relief.

[2] ID.—KNOWLEDGE OF INEQUALITY—WILLFUL REFUSAL OF RELIEF—FRAUD.—Where certain land was assessed at nearly twice its real value while other property in the county was assessed in pursuance of a systematic and willful undervaluation at not to exceed twenty-five cents of its true value, and such fact was shown to the board of equalization by evidence without substantial contradiction, the board should have reduced the assessed valuation of such land, and its willful refusal to do so constituted fraud, or something equivalent to fraud, entitling the land owner to recover the invalid tax under section 3819 of the Political Code.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Reversed.

The facts are stated in the opinion of the court.

Henley C. Booth for Appellant.

W. F. Schuermeyer and H. V. Mather for Respondent.

1. Validity of tax as affected by valuation of other property at lower proportion of actual value, note, Ann. Cas. 1912B, 872.

Remedy of owner of particular class of property assessed at greater per cent of value than other property, note, Ann. Cas. 1914D, 916.

ANGELLOTTI, C. J.—This is an action brought under section 3819 of the Political Code to recover taxes for the year 1917–18 paid by plaintiff under protest. A general demurrer to plaintiff's complaint was sustained and judgment was thereupon entered for defendant. Plaintiff appeals from such judgment.

The theory of the complaint is that the assessment of plaintiff's lands in said county upon which the tax was based was in part void, because the property was deliberately assessed at considerably more than its actual cash value, while all other property in the county was assessed systematically at not exceeding twenty-five per cent of its actual cash value. According to the allegations of the complaint, plaintiff paid the whole tax under protest that the portion of the assessment in excess of a valuation of $17,790 was illegal and void, and this action was duly brought to recover the alleged tax paid on such excess valuation.

The complaint alleges the assessment of plaintiff's lands on the assessment-book for the year 1917–18 at the uniform valuation of $1.50 per acre, "irrespective of the proportion of fair cash value borne by said lands to each other regarding said lands as parcels by government subdivisions," and that the same were not at any time mentioned in the complaint "of a value in excess of eighty cents per acre, treating said lands as an entirety." It further alleged due application by plaintiff to the board of supervisors of the county sitting as a board of equalization for a reduction in the valuation, and the denial, after hearing, of such application. It was further alleged "that it is true and it was shown to said board of equalization by competent evidence without substantial contradiction" that at the time said lands and all other lands in the county were assessed and equalized for the fiscal year 1917–18, there existed "a systematic, willful, and intentional undervaluation of lands assessable by the county for the purpose of assessment upon the said county assessment-roll, said undervaluation being at a percentage of true value, not to exceed twenty-five per cent (25%) for said fiscal year 1917–18," "that the assessment and the equalization of said lands [plaintiff's lands] were each made arbitrarily and capriciously and without regard to their value, and without regard to and greatly in excess of said ratio of twenty-five per cent (25%) so willfully, intentionally, and systematically

adopted," and "that said board of supervisors did not, as
such board of equalization, during said month of July, 1917,
or at all, change said ratio of not to exceed twenty-five per
cent (25%) so systematically, willfully, and intentionally
adopted and carried out," nor change "the assessment made,
as aforesaid, by said county assessor, and shown on said
assessment-book so as to equalize the said assessment on said
plaintiff's lands with the remaining assessments in said
county." It was further alleged that such order denying
plaintiff's application "was made with full knowledge of all
the facts hereinbefore pleaded and was made arbitrarily and
capriciously and without regard to said facts, and in disre-
gard of the evidence then before said board showing said
facts, which evidence was without substantial conflict or con-
tradiction."

Construing these allegations liberally with a view to sub-
stantial justice between the parties, which we are required
to do as against a general demurrer (Code Civ. Proc., sec.
452), they substantially state the following case: Plaintiff's
lands in San Diego County had an average value of not to
exceed eighty cents per acre, and were assessed upon the
assessment-roll at a uniform valuation of $1.50 per acre. At
the time of this assessment there existed in the county "a
systematic, willful, and intentional undervaluation of lands
. . . for the purpose of assessment upon the . . . county
assessment-roll, at a percentage of true value not to exceed
twenty-five per cent." This scheme was carried into effect
on the assessment-roll for the year with regard to the lands
other than plaintiff's. All these matters were made to ap-
pear to the board of supervisors sitting as a board of equaliza-
tion, "by competent evidence without substantial contradic-
tion," and "without substantial conflict or contradiction,"
but said board, with full knowledge of all such facts and
without regard thereto, arbitrarily refused to equalize the
assessment on plaintiff's lands with the remaining assess-
ments.

[1] Taking these to be the facts, as we must for the pur-
poses of the demurrer, we are satisfied it must be held that
plaintiff has stated a good cause of action.

We do not understand it to be disputed that, as said by
the supreme court of the United States in *Sunday Lake Iron
Co.* v. *Township of Wakefield*, 247 U. S. 350, [62 L. Ed.

1154, 38 Sup. Ct. Rep. 495], "it must be regarded as settled that intentional systematic undervaluation by state officials of other property in the same class contravenes the constitutional rights of one taxed upon the full value of his property." This statement finds ample support in the authorities, and was recognized by this court in *Los Angeles Gas & E. Co.* v. *County of Los Angeles,* 162 Cal. 164, 168, [121 Pac. 384, 386], where we said: "This is as true where the injurious effect so produced is caused by inequality of valuation as by any other cause, for, as said in Judson on Taxation, page 680, 'it is obvious that where taxation is upon property that requires valuation, inequality of taxation is produced as surely by inequality of valuation as by inequality of the rate of tax.'"

It must be conceded, of course, that it is thoroughly settled in this state that to our county boards of equalization has been confided the duty of determining "the value of the property under consideration for assessment purposes upon such basis as is used in regard to other property so as to make all the assessments as equal and fair as is practicable," and that in discharging this duty, "the board is exercising judicial functions, and its decision as to the value of the property and the fairness of the assessment so far as amount is concerned constitutes an independent and conclusive judgment of the tribunal created by law for the determination of that question," adjudicating necessarily that "the property is assessed at the same value proportionately as all the other property in the county," and that this adjudication "cannot be avoided unless the board has proceeded arbitrarily and in willful disregard of the law intended for their guidance and control, with the evident purpose of imposing unequal burdens upon certain of the taxpayers . . . or unless there be something equivalent to fraud in the action of the board," and that "mere errors in honest judgment as to the value of the property will not obviate the binding effect of the conclusion of the board." (*Los Angeles Gas & E. Co.* v. *County of Los Angeles, supra.*) In this case, however, the complaint substantially charges that the property of plaintiff was assessed at nearly twice its real value, while the other property in the county was assessed, in pursuance of a "systematic, willful, and intentional" scheme to so do, at not to exceed twenty-five per cent of its real value, and

that all this was shown to the board of equalization by evidence without substantial contradiction or conflict, which means, of course, that there was no evidence sufficient to give lawful support for a conclusion to the contrary, and that the board, *"with full knowledge"* of these facts and "without regard to said facts and in disregard of the evidence," arbitrarily denied plaintiff's application for relief. In other words, the board of equalization, with the facts alleged proven before them and with full knowledge of the existence of those facts, refused to take any action other than to deny plaintiff's application. It seems to us that in such a situation there is to be found the "something equivalent to fraud" that it was said in *Los Angeles Gas & E. Co.* v. *County of Los Angeles, supra,* might entitle the taxpayer to relief in the courts regardless of the denial of his application by the board of equalization. It is not claimed that there was any actual fraud in the sense that there was any corrupt intent on the part of the board. Indeed, the complaint alleges that a majority of the members voting for the denial of the application stated at the time that, while the assessment was unjust, they deemed it proper for the validity of the assessment to be settled by the courts. But, according to the allegations of the complaint, there was a deliberate refusal by the board to so adjust the assessment values that plaintiff's lands would be assessed upon the same basis of valuation as the other lands in the county, the members knowing that as the assessment stood it was not upon the same basis, plaintiff's lands being assessed at nearly double their value, while the other lands in the county were assessed at only one-quarter of their value. With this knowledge it was the plain duty of the board to so reduce plaintiff's assessment valuation that its lands would be assessed upon the same basis of valuation as all the other property in the county, provided that basis was allowed to remain for such other property. [2] Its willful refusal to do this, notwithstanding its knowledge of the facts, would seem to constitute "fraud" or "something equivalent to fraud" within the meaning of those terms as used in the decisions relative to review of the action of assessing officers, entirely regardless of the motive actuating the members of the board. The effect of the refusal to perform this duty was to allow an assessment to remain, which, in the words of the supreme

court of the United States in *Greene* v. *Louisville & I. R. R. Co.*, 244 U. S. 499, 519, [Ann. Cas. 1917E, 88, 61 L. Ed. 1280, 37 Sup. Ct. Rep. 673], constituted "a fraud upon the fully assessed property," in this case upon the more than fully assessed property. An entirely different situation would be presented here if the complaint did not show that the board had denied plaintiff's application with full knowledge of all the facts alleged. We are satisfied that the facts alleged, if proved, would require a conclusion that the assessment of plaintiff's lands was invalid to the extent claimed, and that plaintiff's remedy was that given by section 3819 of the Political Code, viz., payment of the invalid tax under protest and an action to recover the same within the time specified therein. This, as we have already noted, is such an action.

It follows from what we have said that the demurrer should have been overruled, with leave to defendant to answer.

The judgment is reversed and the cause remanded for proceedings not inconsistent with the views herein expressed.

Shaw, J., Wilbur, J., Lennon, J., Olney, J., and Lawlor, J., concurred.