[L. A. No. 8839. In Bank.—April 1, 1926.]

B. FRANKLIN MAHONEY, Respondent, v. THE CITY OF SAN DIEGO (a Municipal Corporation), Appellant.

[1] TAXATION — VALUATIONS OF PROPERTY — DISCRETION OF ASSESSORS.—In the exercise of their powers and functions, assessors, both by the general laws and by the charters of those municipalities in respect to the properties within which the duties of their offices are to be performed, are invested with a large measure of discretion in the exercise of their judgment as to the valuations to be placed for the purposes of taxation upon the several kinds of such property subject to such taxation; and it has been generally held that when this judgment and discretion has been exercised, even though erroneously, within the limitations imposed by the provisions of the constitution and of the laws under which they operate, such judgment and discretion will not, as to the results reached by their exercise, be interfered with by the courts, in the absence of a showing of fraud or bad faith.

[2] ID.—FRAUD OR BAD FAITH—PROOF.—It is not necessary that fraud or bad faith on the part of an assessor shall be expressly shown; it may arise by implication out of the fact that the assessment when taken as a whole and viewed with respect to the assess-

---

1. See 24 Cal. Jur. 214.

able values of the various kinds of taxable properties within the province of his office, discloses such a degree of discrimination between properties of the same class or properties of different classes as to clearly evince a wilful and systematic disregard of the requirements of the constitution and of the provisions of the statute or charter governing and limiting the exercise of the assessor's discretionary powers.

[3] ID.—UNIFORMITY OF VALUATIONS.—The essential question with respect to the assessment of properties of the same or different classes to be determined is as to whether the provisions of the constitution regarding uniformity in valuations and of the laws declaring how uniformity and equality in the distribution of the burdens of taxation are to be ascertained and applied have been fairly conformed to or systematically and intentionally and grossly disregarded.

[4] ID. — SEPARATE ASSESSMENT OF LAND AND IMPROVEMENTS — CONSTRUCTION OF CONSTITUTION AND STATUTE.—The provisions of the constitution, article XIII, section 2, and of the Political Code, section 3627, requiring that land and the improvements thereon shall be separately assessed, do not refer to the valuations to be placed upon these two classes of taxable property, but merely to the fact that the valuation thereof fixed by the assessor in conformity with the other provisions of the constitution and statutes relating to the assessment of property values shall be separately stated by him in his assessment-books.

[5] ID.—LAND AND IMPROVEMENTS—ASSESSMENTS—SEPARATE STATEMENTS.—In order to make effectual the requirement of the law that improved and unimproved real estate shall have a uniform basis of valuation, it is essential that the valuations to be placed upon land and upon the improvements thereon, whether in the form of buildings or crops or trees, shall be separately set forth in the making of assessments thereon.

[6] ID.—LOCATION OF BUILDING—EVIDENCE OF VALUE.—The fact that the favorable location of a building for business purposes was taken into account by the assessor in valuing the property for taxation would not constitute double taxation.

[7] ID.—DETERMINATION OF VALUE—ILLEGAL METHOD.—In the assessing of improvements upon land, the elements of age, state of repair, location, cost of construction, or of replacement are not, nor is any one of them, controlling upon the assessor in the exercise of his judgment and discretion as to what values he should place upon them; but an assessment made in accordance with a systematic and intentionally adopted theory for the arrival at valuations to be placed upon such property which omits

4. See 24 Cal Jur. 167.
7. See 24 Cal. Jur. 206; 26 R. C. L. 365.

to take into consideration any of the foregoing elements, which in common experience ordinarily determine values, and in place thereof substituting an arbitrary basis for the fixation of values upon a percentage plan, will not be upheld when it sufficiently appears that actual discrimination has resulted from such assessment.

[8] ID. — IGNORING PRINCIPLES OF UNIFORMITY — STATEMENT OF ASSESSOR—INVALID ASSESSMENT.—When the legal requirements leading to uniformity have been lost sight of or wilfully abandoned in the making of an assessment, the assessor's statement that he assessed the property "at its full cash value" will not prevail against the actual and admitted facts; nor will his assertion, even if true, that he acted honestly and in good faith in making the assessment suffice to compel the upholding of the assessment when the assessor has wilfully adopted a plan of assessment which violates the fundamental principles laid down for his guidance, and when such assessment is shown to be discriminatory and lacking in uniformity in its burdens it will be invalidated at the instance of property owners who have pursued the proper method to recover taxes paid under it.

[9] ID. — ILLEGAL ASSESSMENT — APPROVAL BY BOARD OF EQUALIZATION — REVIEW BY COURTS. — Where the evidence amply shows that the board of equalization in ratifying an assessment adhered to an arbitrary system and plan of evaluation adopted by the assessor which were discriminatory and lacking in uniformity, the courts will grant relief from the assessment.

(1) 28 Cyc., p. 1699, n. 38.  (2) 28 Cyc., p. 1699, n. 38.  (3) 37 Cyc., p. 742, n. 52.  (4) 37 Cyc., p. 1048, n. 78.  (5) 37 Cyc., p. 1048, n. 82.  (6) 37 Cyc., p. 753, n. 11.  (7) 37 Cyc., p. 742, n. 53.  (8) 37 Cyc., p. 742, n. 55.  (9) 37 Cyc., p. 1112, n. 77.

APPEAL from a judgment of the Superior Court of San Diego County.  S. M. Marsh, Judge.  Affirmed.

The facts are stated in the opinion of the court.

S. J. Higgins, City Attorney, Arthur F. H. Wright and Frank M. Downer, Jr., Assistant City Attorneys, for Appellant.

Sloane & Sloane for Respondent.

9. Action of board of equalization as affecting right to attack assessment on the ground of fraud, note, 9 A. L. R. 1284. See, also, 24 Cal. Jur. 245.

RICHARDS, J.—The plaintiff herein sought by his amended complaint herein the recovery from the defendant, a municipal corporation, the sum of $1,663.93, with interest, which said sum he alleged he had been compelled to pay and did pay to said municipality under protest as taxes illegally imposed upon his property within said municipality and by its officials charged under its charter and the general laws with the levy and collection of taxes in and for said City. In his said amended complaint he alleges that during all the times mentioned therein he was the owner of the particular parcels of real property described therein, together with the improvements thereon; that the City of San Diego is and during all of said times was a municipal corporation organized and operating under a freeholders' charter and having among its officials a city assessor possessing the powers enumerated in said charter and in the general laws; that the said property of the plaintiff was assessed for the fiscal year 1923, and that in so assessing the same the said assessor assessed the several lots or parcels of land so described separately from the improvements thereon; that the said several lots or parcels of land were thus assessed at a total valuation of $84,900, which sum was equal to the full cash value thereof and that the amount of taxes thereafter levied and charged against said lots and parcels of land was levied at the regular tax rate of $2 upon each $100 of said valuation. The plaintiff then proceeds to allege that said assessment and tax levy were and each of them was and is unlawful for the reason "that the said city assessor of said city of San Diego in assessing all the property within said city for city taxes for the fiscal year of 1923, adopted and pursued a systematic, arbitrary, wilful and intentional scheme and method for such assessment which was contrary to law, in that in pursuance of said scheme and method he assessed all land within the said city at from eighty to one hundred per cent of its full cash value, and assessed all taxable improvements on land at not to exceed twenty-five per cent of their cash value, and assessed personal property at not to exceed sixty per cent of its cash value. That such arbitrary, systematic, wilful and intentional scheme and method was deliberately adopted and pursued by the said city assessor with the intent and purpose of discriminating against one class of property, to wit: land, as distinguished

from the improvements thereon, and as distinguished from personal property, and in discrimination against the owners of said land, and that such arbitrary, systematic, wilful and intentional scheme and method was adopted and pursued by the said city assessor contrary to the provisions of the constitution of the United States and constitution and laws of the state of California and of the charter of said city of San Diego, which require that all property shall be assessed and taxed in proportion to its value. That such scheme and method was pursued for the avowed purpose of carrying into effect the unauthorized policy and belief of said city assessor that the revenue for the maintenance of the city . government should be derived mainly from an unequal and discriminating tax on land, and that such method was adopted and followed in fixing said taxes upon the above described property.'' The plaintiff further proceeds to allege that the improvements upon said several lots or parcels of land do not exceed in the aggregate the sum of $10,350, but the same were assessed by said assessor in said year at a total valuation of $2,570, which was not to exceed twenty-five per cent of their full cash value; and that not only were the said improvements upon the plaintiff's said real estate thus assessed at a valuation not in excess of twenty-five per cent of the full cash value thereof, but that all taxable improvements situate upon all of the lots and lands throughout the entire City of San Diego were also assessed at not to exceed twenty-five per cent of their full cash value; and that in so assessing the same the said assessor acted in accordance with an arbitrary, systematic, wilful, and intentional scheme and method and that as a result thereof the tax fixed and levied upon plaintiff's said lots and lands is invalid and unjust and imposes upon said plaintiff and upon his said lands the burden of paying a greater amount of taxation thereon in proportion to its cash value than was assessed and imposed upon other kinds of property subject to taxation for municipal purposes within said City. The plaintiff then proceeds to allege that after making the assessments of the plaintiff's said properties as above alleged and in the manner above set forth the said assessor transmitted the assessment-roll embracing his said assessments to the city clerk for the use of the board of equalization of said City in the performance of its functions

as prescribed in the charter of said City, and that the said board of equalization in regular session had and held a hearing thereon whereat the plaintiff herein appeared before said board and presented to said board all of the facts in his complaint herein alleged as to the irregularity and invalidity of said assessment and demanded the correction and equalization of the same, but that the said board at said hearing denied said plaintiff said relief and that said action was taken by said board with full knowledge of all of the facts pleaded herein and was taken arbitrarily and capriciously and without regard to said facts and in disregard of the evidence then before said board showing said facts, which evidence was without conflict or contradiction; and that the said action of said board was taken in ratification and indorsement of the unlawful scheme and method of assessment adopted and pursued by said assessor. The plaintiff further and finally alleged the demand made upon him for the payment of the taxes so illegally assessed and exacted and his payment of the same under protest as provided in section 3819 of the Political Code; and his demand upon said defendant thereafter and in due course and form for the repayment of the same, and of the refusal of the said defendant to comply with said demand. In its answer to the plaintiff's amended complaint the defendant municipality specifically denied that the said assessment or any part or portion thereof was or is unlawful or invalid or unfair or that its said assessor adopted or pursued any such systematic or arbitrary or wilful or intentional or unlawful scheme or method as is set forth in said complaint; and denies that his assessment of the improvements upon the plaintiff's said lots and parcels of land was at other than the full cash value thereof; and denies that his assessment of the taxable improvements upon lots and lands within said City was at a valuation of not to exceed twenty-five per cent of the full cash value thereof or was at other than their full cash value; and denies that in their action upon the plaintiff's demand for an adjustment and equalization of the assessment upon the plaintiff's said properties or upon the valuations of any and all other of the taxable properties within said City the board of equalization acted either arbitrarily or capriciously or without due regard for the facts or the evidence before it, or that the action of said board was taken in ratification or indorsement of any unlawful scheme or

method adopted or pursued by said assessor, and denies that any refund of taxes to said plaintiff should be made. The cause came on for hearing, together with certain other causes involving similar actions brought by other protesting taxpayers and presenting identical pleadings and which it was stipulated should be heard together. The evidence of the respective parties having been presented the several causes were submitted to the court for decision and the court thereafter made and filed its findings and conclusions thereon. In its said findings of fact the trial court found the facts to be substantially as set forth in the plaintiff's amended complaint and practically in the identical language thereof, and as its conclusions of law based upon said findings of fact decided that the assessments in question upon the properties of the several plaintiffs in said consolidated cases were and each of them was illegal and void and accordingly ordered and adjudged a repayment of the taxes as sued for in each of said actions. Judgment having been so entered the defendant in each of said actions has taken and now prosecutes its several appeals.

The questions presented upon each of these consolidated appeals are of great importance, involving, as they do, not only the powers and duties of the assessor and of the board of equalization of this particular appellant, but involving also the powers and duties generally of the like officials of municipal corporations and political subdivisions of the state of California in the matter of the assessment and equalization of taxes upon real estate and the improvements thereon. The constitution of the state of California provides in section 1 of article XIII thereof that "All property in the state, except as otherwise in the constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value as provided by law or as hereafter provided." By section 2 of article XIII of the constitution it is provided that "Land and the improvements thereon shall be separately assessed. Cultivated and uncultivated land of the same quality and similarly situated shall be assessed at the same value." Section 3627 of the Political Code provides that "All taxable property must be assessed at its full cash value. Land and the improvements thereon shall be separately assessed. Cultivated and uncultivated land of the same quality and similarly situated shall

be assessed at the same value"; while section 3617 of the Political Code, under the subject of definitions provides that "The terms 'value' and 'full cash value' mean the amount at which the property would be taken in payment of a just debt from a solvent debtor." Section 3650 of the same code provides for assessment-books in which must be listed all taxable property and showing "The improvements to be assessed against the particular section, tract or lot of land upon which they are located," and the cash value thereof. Subject to the foregoing provisions of the constitution and of the statutes of the state, the general laws thereof, the charters of the several municipal corporations operating under the same contain provisions for the assessment, equalization and collection of taxes upon real and personal property. These are in the main similar and in the case of chartered cities the provisions of their organic laws relating to the powers and duties of their officials who are charged with the assessment and collection of local taxes are usually drawn in harmony with or in subordination to the general laws. Such is the case with the City of San Diego by the charter of which City it is provided in article VI, chapter I, section 3 thereof as follows:

"Except as in this charter otherwise provided, the assessment of property taxable in the city for municipal purposes, the equalization and assessment of taxes, and sale of property for unpaid taxes, and the redemption of property sold for taxes shall be made in the same manner and with like effect as now or may be hereafter provided by law for the assessment of property, equalization of assessments, levy and collection of taxes, and the sale of property for unpaid taxes for state and county purposes and the redemption thereof; and all provisions of law applicable to such assessments, equalization, levy, collection and sale for state and county purposes, are hereby applied to and shall be the law governing such assessment, equalization, levy, collection and sale for municipal purposes; and the respective officers of the city shall have, possess and perform the same powers and duties in all matters concerning revenue and taxation for municipal purposes as are or may be by law conferred or imposed upon county officers in matters concerning revenue and taxation for state and county purposes."

It is provided in section 6 of the same article of said charter that "The terms 'real' and 'personal property' as

used in this charter shall have the same meaning as the same terms used in the revenue laws of this state; and all property subject to taxation aforesaid shall be assessed at its full cash value which *in the judgment of the assessor* it has at 12 o'clock m. on the first day of January and the lien of the annual city tax levy shall attach at said hour.'' By section 8 of the same article in said charter it is provided that ''A committee of the common council selected as in this charter provided, shall constitute a board of equalization, and shall, after the assessor shall have completed and handed in his assessment-roll to the city clerk, and after five days' notice published in the official newspaper of this city, hold meetings to hear and determine all complaints respecting the valuation of property as fixed by the assessor in such roll; *provided, however,* that before raising any assessment, the board shall notify the person interested by letter deposited in the post office or express, post paid, and addressed to such person at least three days before action taken, of the day fixed when the matter will be investigated. Any member of said board shall have power to administer oaths, and affirmations in the matters before said board, and the sessions of said board shall be held from time to time, as in its notice specified, for the period of two weeks, and no longer.'' These various provisions of the constitution, the statutes and the city charter determine and define the powers, duties and functions of the city assessor and the board of equalization of the City of San Diego. [1] In the exercise of the foregoing powers and functions assessors, both by the general laws and by the charters of those municipalities in respect to the properties within which the duties of their officers are to be performed, are investd with a large measure of discretion in the exercise of their judgment as to the valuations to be placed for purposes of taxation upon the several kinds of such property subject to such taxation; and it has been generally held that when this judgment and discretion of assessing officers has been exercised, even though erroneously, within the limitations imposed by the foregoing provisions of the constitution and of the laws under which they operate, such judgment and discretion will not, as to the results reached by their exercise be interfered with by the courts in the absence of a showing of fraud or bad faith. [2] It is not, however, neces-

sary that such fraud or bad faith on the part of the official shall be expressly shown; it may arise by implication out of the fact that the assessment when taken as a whole and viewed with respect to the assessable values of the various kinds of taxable properties within the province of his office. discloses such a degree of discrimination between properties of the same class or properties of different classes as to clearly evince a wilful and systematic disregard of the requirements. of the constitution and of the provisions of the statute or charter governing and limiting the exercise of' the assessor's discretionary powers. This court had occasion to so declare in the case of *Los Angeles G. & Elec. Co.* v. *County of Los Angeles,* 162 Cal. 164–168 [9 A. L. R. 1277, 121 Pac. 384], which was a case wherein the action of the assessor and of the board of equalization sustaining the same were upheld as not having been clearly or satisfactorily brought within the foregoing principles, the application of which would have been essential to the overthrow of the assessment. It was likewise so held by this court in the case of *Southern Pacific Land Co.* v. *San Diego Co.,* 183 Cal. 543 [191 Pac. 931], wherein it appeared from the averments of the plaintiff's complaint that a systematic, wilful and intentional undervaluation of lands of the same class as those belonging to plaintiff, but belonging to persons other than the plaintiff, was adopted and carried into effect by both the county assessor and county board of equalization, while plaintiff's lands of the same class had been, with like systematic and wilful intent, overvalued. In upholding the sufficiency of the plaintiff's complaint this court quoted approvingly its language in the case of *Los Angeles G. & Elec. Co.* v. *County of Los Angeles, supra,* and further proceeded to hold in conformity with the ruling in that case that while it was not claimed that there was any actual fraud or corrupt intent on the part of the officials making and sustaining the assessment in question, there was, nevertheless, such a violation of plain duty on the part of such officials as to constitute "fraud" or "something equivalent to fraud," within the meaning of those terms as used in the decisions relative to the review of the action of assessing officers, entirely regardless of the motive actuating them in the matter of such an assessment. The foregoing. principles, while applied in the case last decided to property of the same class, would be in our opinion equally applicable to assess-

able properties of different classes where the proofs were plain.  [3]  The essential question with respect to the assessment of properties of the same or different classes to be determined is as to whether the provisions of the constitution regarding uniformity in valuations and of the laws declaring how uniformity and equality in the distribution of the burdens of taxaton are to be ascertained and applied have been fairly conformed to or systematically, and intentionally and grossly disregarded.  The declaration of these principles brings us to the immediate assessment under review upon these several appeals.  With respect to the several classes of assessable property in the City of San Diego in its fiscal year of 1923 there is no dispute; nor is there any material dispute as to the plan or method adopted and put into operation by the assessor of said City with regard to the respective valuations placed upon these several classes of property nor as to the actual effect thereof upon the assessment of property values as a whole.  The assessor was called upon to deal with three main classes of property in the course of the performance of his official duties.  These were (a) real estate; (b) improvements upon real estate; and (c) personal property.  With respect to the valuations placed by him upon all assessable real estate within said City considered separately from the improvements or want of improvements thereon no substantial question is raised as to the fairness of his assessment thereof; nor is there any sufficiently tangible objection made to the valuation placed by him upon personal property.  It is with reference to the said assessor's method and basis of valuation of improvements upon the real estate situate within said City that the main issue in these cases arises.  Upon that subject the plaintiffs have alleged and the trial court has found as hereinabove in this opinion fully set forth.  The question is whether the evidence sustains said findings in accord with the averments of said complaint.  That evidence is also practically uncontradicted and is embraced in the testimony of the assessor himself as a witness in his own behalf before the board of equalization and before the trial court. [4]  The assessor testified that in entering upon his assessment of improvements upon real estate for the fiscal year 1923 he found that the constitution (art. XIII, sec. 2) required that "Land and the improvements thereon shall be separately assessed"; and that the statute (Pol. Code, sec.

3627) contained practically the same requirement; and that he obeyed these requirements in making his valuations of improvements upon real estate. The fundamental error of the assessor, however, consisted in his misinterpretation of the meaning of these requirements of the constitution and of the statute. The foregoing provisions of the constitution and of the statute do not refer to the valuations to be placed upon these two classes of taxable property, but merely to the fact that the valuations thereof fixed by the assessor in conformity with the other provisions of the constitution and statutes relating to the basis of the assessment of property values shall be separately stated by him in his assessment-books. The context of both the constitutional and the statutory provisions would seem to make this sufficiently obvious since in immediate juxtaposition to the above requirement is to be found the requirement that "cultivated and uncultivated land shall be assessed at the same value." [5] In order to make effectual this, as well as the other requirements of law, that improved and unimproved real estate shall have a uniform basis of valuation, it was essential that the valuations to be placed upon land and upon the improvements thereon, whether in the form of buildings or crops or trees, should be separately set forth in the making of assessments thereon. But this assessor, as his evidence conclusively shows, interpreted these provisions of the constitution and statute to mean that in making his valuations of improvements upon real estate he was required to treat this form of property as though its physical separation from the real estate upon which it stood was contemplated by the framers of the organic law and that the valuation to be thus arrived at was to be such as that class of property would be taken at by a creditor in payment of a solvent debt with the idea of its removal from the real estate upon which it was affixed. In a word, the testimony of this assessor sufficiently shows that the basis adopted by him for his valuation of improvements upon real estate in the City of San Diego was, when reduced to its last analysis, its removal or wreckage value. That this was the assessor's concept of his duty, for whatever purpose he may have had in view, is ineluctable when his testimony is read as a whole. He says: "The methods employed in the assessment of the improvements was that I found that under the law I was to separately assess the improvements from the real

estate, and that I should use the same definition of value that was prescribed by law in fixing a value of the property; and that I used every method I was able to use to determine what would be the full cash value of an improvement on real estate, separated from the real estate. Now, in doing that I ascertained, first, the production cost of that improvement, or what it would cost to reproduce the building or improvements; and then, separating it from the real estate on which it stood, I arrived at what I concluded and determined was a full cash value of that property. I used the building permits of the City as a basis, general basis, for the values or the price or cost of that improvement. *I then took a value that I felt would be a fair cash—or full cash value of that improvement after it was separated from the real estate on which it stood.*" Again he says: "I had to assess the building as to its value separated from the real estate, and as to the elements of value that I considered in determining it to be worth twenty-five per cent, why, you could put any element of value in there, wreckage value, or removal value, or value of a man who wanted the property for some particular purpose, who would buy it for that purpose." And he still further states: "In arriving at the initial cost or production price of buildings, as far as percentage was concerned, I assessed old buildings and new buildings the same. They were all taken from the building permits of the city and there was, I believe, no reduction for depreciation. I arrived as near as I could at the cost of the building and then took a percentage of that for the value of the building." Finally, and upon cross-examination, he testified:

"We assessed it without taking into consideration the real estate upon which it stood, and while the law says it is a part of the real estate, it is a peculiar proposition, yet it says we must assess it separately. It is either that proposition or that buildings must be assessed and put on the books of the city exactly what it costs to put up, less the depreciation. There are only two constructions, and I took the construction which I thought was best for the entire city of San Diego; the best and most reasonable construction. My firm judgment is that improvements should be encouraged in every possible way.

"Q. Is there any possible value to be put on improvements to property if not taken in connection with the land except a value for removal purposes.

"A. A nominal value.

"Q. What value would there be except a salvage value?

"A. Or for leased purposes, or something of that kind.

"Q. That was what you tried to arrive at, removal value?

"A. Yes. To make it a basis of assessment."

It is true that the assessor also testifies and repeats that he assessed all of the improvements upon real estate at the full cash value, but in practical application, as his evidence taken as a whole abundantly shows, he did no such thing. Take, for example, his testimony wherein he states that after ascertaining the original cost of construction of buildings of the three general classes designated by him as (a) concrete buildings; (b) brick and tile buildings and (c) frame and stucco buildings, he assessed these several classes of structures entirely regardless of their age or location or depreciation from any cause in the following manner, viz.: He placed an arbitrary valuation upon frame and stucco buildings of fifteen per cent of their cost of construction, upon brick or tile buildings of twenty per cent of their cost of construction; and upon concrete buildings of twenty-five per cent of their cost of construction. He admits that in each instance this was an entirely arbitrary percentage of valuation. His entire departure in so doing from the basic principles laid down in the constitution and statutes as guaranties of uniformity and equality in the ascertainment and admeasurement of property values for purposes of assessment is made doubly obvious by the specific examples to which reference is made in the testimony of the assessor, wherefrom it appears the elements of age, of state of repair, or availability for productive uses and of actual productivity were all eliminated from the assessor's calculation as bases for his estimates of assessment values; and that the elements of original cost of construction or even of present cost of replacement were only taken account of as being points of departure in his arbitrary fixation of valuations at a small percentage of such cost, depending upon the type of structure assessed. The assessor insists that he ought not to take account of the element of location of a building in estimating its assessment valuation as to do so would amount to double taxation, since the real estate upon which such building stands had already been assessed at a valuation depending upon its favorable location. But even in this the assessor is in error, since in common knowledge and ex-

perience each of these two classes of property possesses in itself and independently of the other an actual or exchangeable value dependent upon the location; as, for example, a vacant piece of real estate in a favorable location has an assessable value equal to that of other like pieces of real estate of like favorable location whether improved or not. On the other hand, a building upon leased premises has an assessable value dependent upon its favorable location, regardless of the ownership of the land. **[6]** The fact that the favorable location of such building for business purposes was taken account of by the assessor in laying a suitable burden of taxation upon its owner, and that the same element was also considered in taxing the owner of the land would not in such case constitute double taxation; no more would it do so if the ownership of the land and of the building were united in the same person. **[7]** We do not say that in assessing improvements upon real estate the elements of age, state of repair, location, cost of construction or of replacement are or that any one of them is controlling upon the assessor in the exercise of his judgment and discretion as to what valuations he shall place upon assessable improvements upon real estate; but what we do hold is that an assessment made by an assessor in accordance with a systematic and intentionally adopted theory for the arrival at valuations to be placed upon that form of property which omits to take into consideration any of the foregoing elements which in common experience ordinarily determine values, and in place thereof substitutes an arbitrary basis for the fixation of values upon the several classes of such form of property for purposes of assessment upon a percentage plan, from which the foregoing elements for determining values are expressly excluded, will not be upheld when it sufficiently appears that actual discrimination has resulted from an assessment thus arrived at. **[8]** When the determining principles leading to uniformity in distributing the burdens of taxation have been lost sight of or wilfully abandoned in the making of the assessment complained of, the asseveration of the assessor that he assessed that form of property ''at its full cash value'' will not avail him in the presence of the actual and admitted facts supplied from his own lips; nor will his assertion, even though it be admitted to be true, that he acted honestly and in good faith in making the assessment in question suffice to compel

the upholding of an assessment when the assessor making it, however honest and well-intentioned, has wilfully adopted and deliberately pursued a plan of assessment which is violative of the fundamental principles which should be his guide in the performance of his official duty; and when such an assessment is sufficiently shown to be replete with discrimination and lacking in uniformity in the burdens it imposes upon the owners of assessable property, such assessment will be invalidated at the instance of those property owners who shall pursue the proper statutory method to recover the taxes thus improperly imposed.

We are satisfied that the record in this case discloses that such discrimination and lack of uniformity exists upon the face of the assessment in question. It is true that the plaintiffs herein are the owners respectively of real estate holdings of large value upon which there are in each case improvements of less but yet of considerable value and that it might well be said that these particular plaintiffs have not been substantially affected or injured by too low an assessment, however arbitrarily imposed upon the improvements upon their real estate which latter form of property they admit has been assessed at its full cash value. But the injury which these plaintiffs have suffered and of which they have a right to complain with respect to said assessment is that resulting from a general and systematic undervaluation of all improvements upon real estate within said City, as a result of which an undue and unequal burden of taxation has been laid upon all real estate therein. An equalization upon a proper basis of the valuations of both real estate and the improvements thereon would have resulted in relieving the former of the undue proportion of its burden and to such measure of relief the owners of real estate whether improved or unimproved, were entitled upon proper application to the city board of equalization. [9] It is urged by the appellant herein that the plaintiffs herein made such application and that they and each of them had a full and fair hearing thereon; and that upon such hearing their application for such or any relief was denied; and that the denial of such relief by said board of equalization is final upon the right of said plaintiffs to such relief, and that the determination of said board of equalization thereon is not the proper subject of review by the courts. Conceding the correctness of the principle thus invoked as fully supported

by a long and uniform line of decisions, we are again met with the difficulty of giving it application to the facts of the present case, since the trial court has found upon what we deem ample and sufficient evidence that said board of equalization in its action in upholding the assessor's concept with regard to the assessment complained of was actuated and controlled by its adherence to the same arbitrary system and plan of evaluation as that systematically pursued by the assessor, and that the rulings of said board in the ratification of the assessor's aforesaid plan and method of assessment had the effect of upholding and perpetuating the same discrimination and want of uniformity in said assessment of which the plaintiffs herein complain. It will suffice to say that there is no other or different immunity available to boards of equalization than those which are available to assessors when the acts of the former are found to be arbitrary and when the proven discriminations and inequalities of the latter in making assessments are perpetuated thereby; and that the courts will grant relief in the one case as readily as in the other when the record before them justifies the granting of such relief.

In conclusion it may be stated that we are satisfied that the trial court was justified by the evidence before it in awarding to these particular plaintiffs in these several cases the relief to which they had shown themselves to be entitled by pursuing the remedies against the assessment assailed herein which the statute has provided; and hence that its judgment in each of said cases will be and the same is hereby affirmed.

Lennon, J., Curtis, J., Seawell, J., Waste, C. J., Shenk, J., and Lawlor, J., concurred.