[L. A. No. 11234. In Bank.—September 28, 1932.]

THE L. W. BLINN LUMBER COMPANY (a Corporation), Appellant, v. THE COUNTY OF LOS ANGELES et al., Respondents.

E. S. Williams for Appellant.

Everett W. Mattoon, County Counsel, Gordon Boller, Deputy County Counsel, and Erwin P. Werner, City Attorney, for Respondents.

PRESTON, J.—Appeal by plaintiff from judgment of nonsuit entered in an action to recover taxes paid by it under protest (sec. 3819, Pol. Code) upon a possessory, or leasehold, interest in tide lands owned by the City of Los Angeles.

The complaint first alleged the creation of the leasehold interest, in substance as follows: In 1907, as the result of the settlement and compromise of litigation between the City of Los Angeles and the Southern Pacific Railroad, the city leased certain tide lands to the railroad. In 1918 said railroad assigned to Consolidated Lumber Company, a corporation, all of its interest in and to a portion of said tide lands, which portion, comprising some 27.56 acres, more or less, the latter company leased to plaintiff in the year 1920, at an annual payment of $300 per acre for the first five years, increasing materially at the commencement of the second, third, fourth and fifth respective five-year periods thereafter, then to be at the rate of $600 per acre per annum for the balance of the term of the lease, extending to July 23, 1947.

The complaint further alleged that said rentals to be paid by plaintiff represented the full value of its occupancy and use of the premises; that, however, in 1925, the county assessor of Los Angeles County assessed its leasehold interest,

denominated "Possessory interest in land under ordinance number 37036 N. S.", upon a valuation of $210,840 and levied a tax thereon of $7,569.14 for said year; that plaintiff thereupon protested the assessment upon numerous grounds, claiming that said valuation was fixed in a purely arbitrary way, without reference to the true value of the leasehold interest itself as distinguished from the value of the fee title to the land, and that the tax was so excessively high and arbitrary as to amount to fraud. Plaintiff further alleged that it paid the tax under protest and petitioned for a hearing before the board of equalization, which hearing was duly had and evidence received and heard and that said board then sustained the assessor's valuation of said possessory right as being fair, equitable and not discriminatory, all to the injury of plaintiff for the various reasons set forth in its protest and in said pleading, wherefore plaintiff prayed judgment against defendants for the full amount of said tax so paid under protest, to wit: $7,569.14, together with interest, costs and other general relief. By a second count of the complaint plaintiff also sought to recover upon similar facts and like grounds, a tax in the sum of $323.10 paid by it under protest, pursuant to an assessment levied against its right to occupy, and maintain and operate a private wharf upon, certain other tide lands owned by the City of Los Angeles, adjoining and used with the previously mentioned tract, plaintiff's interest therein being denominated "Possessory interest in land under order number 563, Parcel number 4."

Defendants answered, asserting that said assessments were honestly arrived at and were made after a full and complete examination of plaintiff's properties, by the adoption and use of the same method used in all other cases involving property of the same character, similarly situated, without any discrimination or inequality whatsoever.

The case went to trial and after testimony, more or less preliminary, had been given, plaintiff offered to prove that the full cash value of its said interest was not more than one-half or possibly one-third or one-fourth of what the county had assessed them for. The court thereupon refused to entertain any further evidence other than the record of proceedings had in the matter before the board of equalization and thereafter in effect affirmed the action of

said board, granting in favor of defendants here the judgment of nonsuit from which plaintiff now prosecutes this appeal.

A further explanation of the situation of plaintiff with reference to these lands is advisable. Plaintiff has assembled in a contiguous body some forty acres of land located on San Pedro harbor, using it for an industrial plant for its lumber and kindred business and has constructed a private wharf and other valuable improvements thereon. Some fifteen acres of this combined area consists of a tract owned in fee simple by plaintiff, fronting on said harbor and adjoining the land in controversy on its northerly side. For convenience, we shall designate this area as Tract A. The larger acreage leased by plaintiff from Consolidated Lumber Company consists of some 27.56 acres, which we shall designate Tract B. A third tract, known as the wharf tract, is a strip of land about 40 feet in width and 1,000 feet in length lying immediately in front of Tract B and forming the area between the pierhead line and the bulkhead line, which tract we shall call, for convenience, Tract C. Tract D is also cut by the tracks of the municipal belt railway and also by a sewerage plant. These two last-mentioned ownerships occupy in the aggregate some two and one-half acres of the tract.

Tract B was assessed in the year 1925 at $210,840. In 1924, the same area was assessed at $110,240, and for the year 1923, the assessment was reduced to $55,000. Tract C was assessed for the year 1925 at $9,000. Tract A, the land owned in fee by plaintiff, was zoned and assessed at 24c a square foot for a large portion thereof and at 16c a square foot for the remainder.

The proceedings before the board of equalization disclose that in the assessment here under review Tracts A, B and C were considered as a unit and as constituting one ownership. They were likewise zoned in the same way, Tract A being assessed as above described at 24c and 16c per square foot and Tract B in identically the same way and at the same figure, while Tract C was assessed throughout at 24c a square foot; on such assessments the figures above noted were derived. In other words, on the face of the proceedings, it is clear that the assessor and board of equalization made little, if any distinction between the prop-

erty owned in fee simple by plaintiff and the property held by it merely under a term lease. Both counts of the complaint allege wilful and arbitrary overvaluation of said areas to such an extent as to constitute fraudulent conduct on the part of said officials. An examination of the proceedings discloses without controversy that in valuing the smaller area, for example, no account whatsoever was taken of the purchase price or consideration paid by plaintiff for its lease. Likewise no account was taken of the cost of valuable improvements placed upon said area by plaintiff. The same statement is substantially true of Tract B. The annual payments made by plaintiff to Consolidated Lumber Company were given little or no place in the calculation of the assessor. In fact, there was no effort whatsoever to ascertain the gross or net annual earnings of plaintiff on the property, as a whole or in separate parcels. Neither was any allowance made for fixed charges or for depreciation or for the amortization of other capital outlay. Nor was there any definite differentiation arrived at between the waterfront or wharf tract and the back area. On the whole the record before the board of equalization shows clearly that the assessor and said board disregarded practically every factor that should have been considered in arriving at a just valuation. (*Mahoney* v. *City of San Diego,* 198 Cal. 388, 402, 403 [245 Pac. 189].)

Plaintiff introduced testimony tending to show that the rent paid for the property was the full value of the leasehold interest in Tract B and that as to Tract C the value was not to exceed $1,000; yet it was willing to accept an assessment of $55,000 on Tract B, as made in 1923. In support of the valuation fixed by the assessor only one witness was called, whose testimony was so unsatisfactory as to amount to a confession of employing a purely arbitrary and erroneous method of appraisal.

In the case of *Blinn Lumber Co.* v. *County of Los Angeles et al.,* (No. 11514) this day decided, *post,* p. 474 [14 Pac. 512], we have set forth substantially the system which should be employed in the valuation of leasehold estates, that is: The duration of the leasehold estate must be taken into account as well as the fact that the estate of the lessee is a limited one and the excess of annual benefits over burdens must of necessity be the important factor in such

an appraisal. The capital employed, whether in making an outright purchase of the lease or in assuming the payment of rentals periodically, must, with interest, be amortized during the life of the lease in order to prevent the waste of capital and to reflect the true worth of the premises. Improvements placed upon the property which revert to the lessor must also be taken into account and amortized over the same period. Taxes and other fixed charges must also be considered. The combined net earnings of the lease over the entire term is its ultimate value and its present value as of any date upon any assumed rate of interest can be computed from this basis and the result so obtained is the approximate present value of the leasehold.

In the case last cited we condemned an assessment, on the identical property here denominated Tract B, of $110,240, as being so excessive as to amount to constructive fraud. Without any evidence of a substantial change in conditions we are here called upon to indorse an assessment on said property of nearly twice that amount. Manifestly this cannot be done. The record before the board of equalization itself is sufficient to show that the assessor failed to employ a legal and proper method of valuation of plaintiff's property rights and as a result plaintiff has been assessed and required to pay an exorbitant and arbitrarily fixed tax. These views make it unnecessary to discuss the propriety of the action of the lower court in refusing to allow plaintiff to support its allegations of constructive fraud *aliunde* the record before the board of equalization.

The judgment is reversed.

Tyler, J., *pro tem.*, Waste, C. J., Langdon, J., and Curtis, J., concurred.