[Civ. No. 17260. First Dist., Div. Two. May 22, 1957.]

LOYD V. CROTHERS, Appellant, v. COUNTY OF SANTA CRUZ, Respondent.

Holbrook, Tarr, Carter & O'Neill, W. Sumner Holbrook, Jr., and Francis H. O'Neill for Appellant.

Ray J. Scott, District Attorney, for Respondent.

KAUFMAN, P. J.—Plaintiff taxpayer has appealed from a judgment in favor of defendant county in this action brought pursuant to Revenue and Taxation Code, sections 5136-5143, to recover the amount of $19.07 of property tax paid under protest. Plaintiff contends that a portion of his ad valorem tax has been illegally collected by the defendant. The facts are as follows:

Before 1952, all ad valorem assessments in Santa Cruz County had been set forth on the assessment roll at 25 per cent of the fair market value of the property assessed. In 1952, as a result of recommendations made by the State Board of Equalization, the county assessor increased his assessment ratio to 40 per cent of market value. Plaintiff is the owner of property in the city of Capitola on which was levied a total tax of $330.80 for the tax year 1952-1953, at the rate of $1.678 per $100 of assessed valuation. The assessed valuation of plaintiff's property placed on the tax roll was $6,820. On or about July 21, 1952, the county assessor of Santa Cruz County, as required by law, completed and delivered the tax roll to the county board of supervisors sitting as a board of equalization, accompanied by affidavit, that all property had been assessed by him equally and without favor to anyone, as required by Revenue and Taxation Code, section 616.

The county board of supervisors, pursuant to Revenue and Taxation Code, section 601, published notice that it would sit as a Board of Equalization from July 24, 1952 to August 4, 1952. Within this period, 182 written and verified applications for reductions in assessed valuation were received by the board; 84 of these were acted upon and the remainder dismissed for the applicant's failure to appear for hearing. The plaintiff did not file any applications for the reduction of valuation on any of his properties. On August 10, 1952, the county board of equalization adjourned "sine die." The actions complained of by the plaintiff are the following:

(1) On August 8, 1952, the board of equalization, by unanimous vote ordered a reduction of 33⅓ per cent in the assessed valuation of 171 parcels of farm land in the Watsonville Joint Union High School District. This district encompasses property in both Santa Cruz County and Monterey County. The reduction was based upon testimony received by the board that the assessed valuation placed upon comparable property in the district in Monterey County was lower than the assessed valuation determined by the county assessor of Santa Cruz County, and was made so that the taxpayers of Santa Cruz County would not be paying an unjust amount for the high school district. The reduction was made without there being filed by or on behalf of any taxpayer a written application and without the examination on oath of the persons affected.

(2) On August 8, 1952, the board ordered a reduction of 33⅓ per cent in the assessed valuation of 490 parcels of farm land, also without the written application or examination under oath of the persons affected. This reduction was based upon the recommendations of the county assessor, and testimony received by the board that the parcels in question had been over-valued by the county assessor. Of these 490 properties, 300 lots were owned by Peninsula Properties, Inc., a land holding company, and the remaining 190 by several subdividers. The county assessor testified that it was normal practice to give low valuations to lots remaining unsold for a certain length of time in the hands of the subdivider.

(3) On Sunday, August 10, 1952, at 8 a. m. the county board of equalization ordered a reduction slightly below 33⅓ per cent of the assessed valuation entered on the tax roll by the county assessor, on four parcels of farm land. Applications for reduction were filed on behalf of these four taxpayers. All of the above reductions were entered on the

tax roll by the clerk of the board of equalization after the tax roll had been delivered to the county auditor.

(4) On August 19, 1952, the Board of Supervisors of Santa Cruz County ordered the 33⅓ per cent reduction of 50 additional parcels in the Watsonville Joint Union High School District, on the affidavit of the county assessor that these parcels had through clerical error been omitted from the original list. This change was entered on the tax roll by the county auditor.

The trial court found the facts substantially as stated above. There is no dispute as to the facts. The controversy centers on the legal effects of these facts and the conclusions of law drawn by the trial court.

Plaintiff's contentions are as follows:

(1) That as a result of the above acts of the county board of equalization and the county board of supervisors, 721 assessments of land, personal property and improvements, as entered on the tax roll by the county assessor with a total aggregate assessed valuation in excess of $4,300,000 were reduced by 33⅓ per cent to a total aggregate assessed valuation of $2,-834,390. That the result of these reductions was that these properties were on the assessment roll at the 1952 level of 25 per cent of fair market value, while plaintiff's property which was not so reduced, was on the assessment roll at 40 per cent of its fair market value. That therefore plaintiff's property was forced to bear an unequal burden of taxation, and that plaintiff was therefore denied the uniformity of taxation guaranteed by article XIII, section 1 of the state Constitution and the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.

(2) That the county board of equalization acted in excess of its jurisdiction under Revenue and Taxation Code, section 1607, in ordering the reductions without the verified petitions and sworn testimony of the persons affected, and in taking action after August 4th, the published date for its termination as a board of equalization. Plaintiff maintains that Revenue and Taxation Code, sction 1607, is jurisdictional. Respondent contends that the jurisdiction of the county board of equalization is derived from the Constitution and that the statutory provisions are only directory in aid of jurisdiction.

(3) That the county board of equalization erred in considering the assessed valuations placed upon comparable property in Monterey County and in attempting to equalize assessments for the entire Watsonville Joint Union High School District.

(4) That the county board of supervisors, in permitting the

correcting of the tax roll by the addition of 50 parcels, exceeded its limited statutory power to reduce assessments.

(5) That the reductions in assessed value could not be properly entered on the tax roll by the clerk of the Board of Equalization as Revenue and Taxation Code, sections 1612-1613, authorize changes only before delivery of the tax roll to the county auditor.

(6) That the trial court erred in its findings of fact and conclusions of law that all of the acts complained of were legal and within the jurisdiction of the boards and that the reductions were not the result of any fraud, actual or constructive, nor the result of any arbitrary wilful disregard of the law.

(7) That the trial court erred in its finding that plaintiff was estopped from maintaining the action herein by reason of the fact that he did not file a verified protest with the county board of equalization within the time and manner prescribed by law. Plaintiff contends that he was not required to file a protest as he had no notice of the reductions made until too late, and by virtue of the fact that the errors made occurred by act of the board of equalization and the board of supervisors and not by act of the assessor. Plaintiff seeks to bring himself within the rule of *Associated Oil Co.* v. *Orange*, 4 Cal.App.2d 5 [40 P.2d 88], and *Parr-Richmond Industrial Corp.* v. *Boyd*, 43 Cal.2d 157 [272 P.2d 16], that no appearance before the board of equalization is required where the assessment is erroneous or illegal.

It is not necessary to dispose of all of the above contentions, as we are in agreement with the excellent memorandum opinion of the trial court that the plaintiff here has no cause for complaint. ▮▮ The mere fact that the assessed value of certain property is reduced by a board of equalization will not give another taxpayer a cause of action even though the taxes he pays are thereby increased. The plaintiff here did not allege or attempt to prove that his property was similar in character or situation to the reduced property; or that his property was overvalued, or the reduced property undervalued by the reduction.

▮▮ The constitutional requirement of equality and uniformity of taxation means that taxes must be levied according to some fixed rate or rule of apportionment so that all property shall pay a like amount upon similar kinds of property of the same value. (*People* v. *Whyler*, 41 Cal. 351; *People* v. *Keith Railway Equip. Co.*, 70 Cal.App.2d 339 [160 P.2d 244].)

■ While inequality of taxation is produced as surely by inequality of valuation as by inequality of the rate of tax, (*McClelland* v. *Board of Supervisors,* 30 Cal.2d 124 [180 P.2d 676]) property owners are entitled to have their property placed on the same basis of valuation as that applied to other property of like character and similarly situated. (*Birch* v. *County of Orange,* 186 Cal. 736 [200 P. 647] ; *Rittersbacher* v. *Board of Supervisors,* 220 Cal. 535 [32 P.2d 135].) ■ To secure an equality of taxation it is necessary that there be an equality of assessment as well as an equality of tax rates. (*Rancho Santa Margarita* v. *San Diego County,* 135 Cal.App. 134 [24 P.2d 716].)

■ The position of the plaintiff here is aptly stated in *Wild Goose Country Club* v. *County of Butte,* 60 Cal.App. 339 at page 349 [212 P. 711] : ". . . plaintiff's cause of complaint, as disclosed by the evidence, is not that its own lands are assessed too high, but that certain other lands are assessed too low. Plaintiff has no greater cause of complaint on account of these low assessments than has every other taxpayer in the county whose lands were fairly assessed. The law certainly does not contemplate that a taxpayer, whose lands are assessed at the same relative value as other lands generally in the county, is entitled to have his assessment reduced to the level of a comparatively small number of parcels which are assessed at a low figure." In that case in upholding a judgment in favor of the defendant, the court said at pages 342 and 343: "In the absence of evidence tending to show the value of plaintiff's lands or of other lands in the county, the premises were wanting from which a conclusion could be drawn by the board that inequality of assessments existed. . . . Proof that one taxpayer's lands are assessed at a higher value than those of his neighbors does not justify the inference that there is any inequality in the assessments, in the absence of proof of the relative market values of the lands compared."

■ The plaintiff has not shown that he was subjected to taxes not imposed on others of the same class, but only argues that he should also receive the benefits of the illegal actions of the board. There is a curious inconsistency in this argument. It would appear to be more consistent to argue that because of the illegal acts complained of, the entire assessment roll of Santa Cruz County for the year 1952-1953 was invalid. As stated on this point in *Rittersbacher* v. *Board of Supervisors, supra,* page 542, "Such a result may not lightly

be contemplated and should not be adjudged except upon a clear showing of 'fraud or something equivalent of fraud' on the part of the assessing authorities . . ." *Hammond Lbr. Co.* v. *County of Los Angeles,* 104 Cal.App. 235 at page 240 [285 P. 896] states: "To invalidate the assessment there must be a conscious failure to exercise a fair and impartial judgment, or a resort to arbitrary methods varying from those employed in assessing other property of like character and situation and resulting in the imposition designedly of an unequal burden on the property of the complainant." Taxes will not be invalidated on the basis of a speculative charge of discrimination. (*Simms* v. *County of Los Angeles,* 35 Cal. 2d 303 at page 312 [217 P.2d 936].)

▇ Plaintiff argues that "various classes of property cannot be treated differently one from the other." As aptly pointed out by the court below, even conceding that the constitutional requirement of uniformity is not limited to property of like character, but that it includes all property within the general class of property subject to ad valorem taxes, it does not follow that the constitutional requirement was violated under the evidence introduced in this case. It should be noted that there was some evidence in the instant case that the valuations placed on certain properties by the assessor were excessive. As pointed out in *Mahoney* v. *City of San Diego,* 198 Cal. 388, at page 398 [245 P. 189] : "The essential question with respect to the assessment of properties of the same or different classes is as to whether the provisions of the constitution regarding uniformity in valuations and of the laws declaring how uniformity and equality in the distribution of the burdens of taxation are to be ascertained and applied have been fairly conformed to or systematically and intentionally and grossly disregarded."

▇ Boards of equalization are quasi-judicial bodies established by law to remedy excessive assessments made by· the assessor. (*Merchants Trust Co.* v. *Hopkins,* 103 Cal.App. 473 [284 P. 1072].) As further pointed out by the trial court in its memorandum opinion, our Supreme Court said in *Universal Consol. Oil Co.* v. *Byram,* 25 Cal.2d 353 at page 356 [153 P.2d 746] : ". . . it is well settled in this state that to the authorized county board of equalization has been confided the duty of determining 'the value of the property under consideration for assessment purposes upon such basis as is used in regard to other property, so as to make all the assessment as equal and fair as practicable'; that in discharging this duty, 'the board

is exercising judicial functions, and its decision as to the value of the property and the fairness of the assessment so far as amount is concerned constitutes an independent and conclusive judgment of the tribunal created by law for the determination of that question,' adjudicating necessarily 'that the property is assessed at the same value proportionately as all other property in the county'; that such adjudication 'cannot be avoided unless the board has proceeded arbitrarily and in wilful disregard of the law intended for their guidance and control, with the evident purpose of imposing unequal burdens upon certain taxpayers . . . or unless there be something equivalent to fraud in the action of the board;' and that 'mere errors of honest judgment as to the value of the property will not obviate the binding effect of the conclusion of the board.' '' We are met by the presumption in favor of the regularity of the result reached by a judicial body. ■ An unequal tax assessment cannot be held in violation of the Fourteenth Amendment where the purpose of the assessing board to discriminate is not clearly established and where discrimination may be attributed to an honest mistake of judgment and lack of time and evidence for making general reevaluations when objection was made. (*Sunday Lake Iron Co.* v. *Wakefield*, 247 U.S. 350 [38 S.Ct. 495, 62 L.Ed. 1154].) In *Sioux City Bridge Co.* v. *Dakota County*, 260 U.S. 441 [43 S.Ct. 190, 67 L.Ed. 340, 28 A.L.R. 979] cited by plaintiff, the Bridge Company was able to prove sufficiently that it was singled out for discrimination, so that the case was remanded to the state board of equalization for a hearing to determine whether or not there was such discrimination. *Hillsborough Township* v. *Cromwell*, 326 U.S. 620 [66 S.Ct. 445, 90 L.Ed. 358], and *County of Los Angeles* v. *Ransohoff*, 24 Cal.App. 238 [74 P.2d 828], were also situations in which a single taxpayer was assessed for a class of property for which no other taxpayers were assessed. In *Mahoney* v. *City of San Diego,* 198 Cal. 388 [245 P. 189], strongly relied upon by the plaintiff, it was held that the assessor's valuation of improvements at their salvage value rather than market value under a misinterpretation of the law, while assessing the plaintiff's real estate at full value was sufficient violation of duty to show something akin to fraud. The injury which the plaintiffs there had suffered was, ''. . . that resulting from a general and systematic undervaluation of all improvements upon real estate within said City as a result of which an undue and unequal burden of taxation has been laid upon all real estate

therein.'' The court relied on *Los Angeles Gas & Elec. Co.* v. *County of Los Angeles,* 162 Cal. 164 [121 P. 384, 9 A.L.R. 1277], and *Southern Pac. Land Co.* v. *San Diego County,* 183 Cal. 543 [191 P. 931]. In the former, the trial court rendered a judgment for the plaintiff on the ground of the extreme disparity of valuation between the plaintiff's property and property of like character which arose from the intentional design of the assessor in using a different method to evaluate the property of the electric company; in reversing the judgment, the Supreme Court found that there was nothing in the evidence to indicate that the action of the board was not fair and not based on evidence presented to it. In the latter, the plaintiff's land was assessed at twice its market value while all other property in the county was assessed at 25 per cent of its value.

In view of the foregoing, it is clear that the findings and judgment of the trial court find support in the record before us.

Judgment affirmed.

Dooling, J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 16, 1957.