[L. A. No. 6018. In Bank.—August 29, 1921.]

## A. OTIS BIRCH et al., Appellants, v. COUNTY OF ORANGE, Respondent.

[1] TAXATION—EXCESSIVE ASSESSMENT—BAD FAITH.—An assessment for taxation purposes of a tract of oil land containing 20.16 acres in an amount exceeding by fifty-five thousand dollars, the assessment of the entire 1,123.43 acres of adjoining oil properties comprising 617 acres of proven or tested oil lands and producing monthly 215,608 barrels of oil of like character, as against 44,686 barrels from the 20.16 acre tract, is so grossly inequitable and palpably excessive as to raise an inference of bad faith.

[2] ID.—EQUALITY OF VALUATION—RIGHT OF TAXPAYER.—A taxpayer is entitled to the exercise of good faith and fair consideration on the part of the taxing power in assessing his property at the same rate and on the same basis of valuation as that applied to other property of like character and similarly situated, and inequality of taxation is produced as surely by inequality of valuation as by inequality of the rate of tax.

[3] ID. — RECOVERY OF TAXES — PRESENTATION OF CLAIM TO SUPERVISORS—UNNECESSARY CONDITION PRECEDENT.—A taxpayer may recover taxes paid under protest under section 3819 of the Political Code without first presenting a verified claim therefor to the board of supervisors under section 4075 of such code.

---

2. Remedy of owner of particular class of property assessed at greater per cent of value than other property, note, **Ann. Cas.** 1914D, 916.

Action of board of equalization as affecting right to attack assessment on ground of assessor's fraud, note, 9 **A. L. R.** 1284.

3. Recovery of illegal tax paid "under protest," notes, 45 **Am. Dec.** 164; 94 **Am. St. Rep.** 425; 8 **Ann. Cas.** 669; 10 **Ann. Cas.** 1050; **Ann. Cas.** 1915A, 495.

APPEAL from a judgment of the Superior Court of Orange County. W. H. Thomas, Judge. Reversed.

The facts are stated in the opinion of the court.

George H. Woodruff and Clyde C. Shoemaker for Appellants.

L. A. West, District Attorney, W. F. Menton and A. P. Nelson for Respondent.

SLOANE, J.—These consolidated actions were brought by the plaintiffs against the county of Orange to recover first and second installments of taxes paid under protest, under the provisions of section 3819 of the Political Code.

The complaints in both cases charge the county assessor and the county board of equalization with having acted arbitrarily and fraudulently in fixing a disproportionate and excessive valuation upon the property of the plaintiffs.

Upon the trial, and after the plaintiffs had rested their case, the trial court made its order granting a judgment of nonsuit.

This appeal is from the judgment.

The two suits covered, respectively, the first and second installments of state and county taxes for the year 1916. The assessment and levy were upon 20.16 acres of oil land in Orange County, the property of plaintiffs.

The assessment complained of placed a valuation of $645,120 upon this tract. Following a hearing before the board of equalization, the above assessment was reduced to six hundred thousand dollars. The amount of taxes levied and paid under protest, and sought to be recovered in these actions, is $19,143.94.

The fact upon which appellants chiefly rely to maintain their allegations of an unfair, unjust, excessive, and exorbitant assessment, and of willful and fraudulent discrimination on the part of the assessor and board of equalization, is the extravagant disparity between the assessed valuation placed upon this tract and that upon adjacent lands of the same quality and value. The undisputed evidence on. . this point is such as to justify the expression ''astounding,''

186 Cal.—47

which was used by the trial judge who granted the judgment of nonsuit.

The difference in valuation is, indeed, so astonishing, excessive, and unaccountable as to impress upon the transaction a very strong inference of discrimination, unfairness, and oppression, either through design or through such gross error or negligence as to amount to the "equivalent of fraud."

The evidence of plaintiffs presented on the hearing before the board of equalization, and on the trial, discloses that this tract is surrounded by other oil lands almost identical in character, development, production, and value, compared acre for acre of proved and producing oil lands alone, which, under the same assessment, were valued at a rate from ten to fifteen times less than was placed on plaintiffs' lands.

The trial judge reviewing the evidence makes this further statement: "There is no question that there has been a great disparity in assessing these properties by the assessor, and that the assessor has placed a valuation on plaintiffs' property out of all proportion with other contiguous properties similarly situated approximately of the same value per acre."

We take the following summary of the proved facts from appellants' opening brief, as it appears to conform to the evidence, and the accuracy of the statements is not questioned by the reply brief of respondent:

"The property of the Birch Oil Company [the appellant] in said field consists of 20.16 acres of oil land. It will be noted by reference to said Exhibit No. 14 that said property is surrounded by other developed oil lands owned by other companies. The record shows that the Fullerton Oil Company owns 61.52 acres of oil land adjoining the Birch property on the west; the Crown of the Valley Oil Company owns 108.91 acres of oil land under lease to the Columbia Oil Producing Company, adjoining the Birch property on the north; the Brea Canyon Oil Company owns 203 acres of oil land adjoining the Birch property on the east; and the General Petroleum Company, owns 80 acres of oil land adjoining the Birch property on the south. Immediately east of the property of the Brea Canyon Oil

Company, and adjoining the same, the Union Oil Company owns 670.89 acres of oil land.

"It also appears that all of the Birch Oil Company property, 20.16 acres, is proven oil land; that of the 61.52 acres belonging to the Fullerton Oil Company, approximately 25 acres are proven oil land; that from 17 to 20 acres of the 108.91 acres owned by the Crown of the Valley Oil Company are proven oil land; that about 60 acres of the 203 acres owned by the Brea Canyon Oil Company are proven oil land; that of the 80 acres belonging to the General Petroleum Company, about 15 acres are proven oil land; that approximately 500 acres of the 670.89 acres owned by the Union Oil Company are proven oil land. By 'proven oil land' is meant that the acreage specified has been proven by wells already drilled thereon to be oil-bearing and oil-producing land.

"On the first Monday in March, 1916, the day on which the assessment in question was made by the county assessor of Orange County, there were nine producing wells on the Birch property, yielding a total monthly production of 44,-686 barrels of oil. [Tr. pp. 273–275.] There were nine producing wells on the proven 25 acres of the Fullerton property, yielding a total monthly production of 47,154 barrels of oil. [Tr. pp. 239–244.] There were five producing wells on the proven 17 acres of the Crown of the Valley or Columbia property, yielding a total monthly production of 31,724 barrels of oil. [Tr. pp. 252–254.] There were twenty-three producing wells on the proven 60 acres of the Brea Canyon property, yielding a total monthly production of 48,619 barrels of oil. [Tr. pp. 262–266.] There were nineteen producing wells on the proven 500 acres of the Union Oil Company property, yielding a total monthly production of 59,987 barrels of oil [Tr. p. 308]; and there were eight producing wells on the proven 15 acres of the General Petroleum property yielding a monthly production of 28,124 barrels of oil [Tr. p. 199]. The evidence clearly shows that the oil produced from these various properties is of about the same quality and quantity and that the formation and general geological structure, as well as the depth of the oil sand and the drilling conditions and all other surface and underlying features of the properties, are remarkably uniform and similar throughout

the entire Brea Oil Field in which the properties referred to are located. [Tr. fols. 927–1014, also fols. 1231–1283.]

"The assessor of Orange county placed valuations upon the above respective properties for assessment purposes for the year 1916–1917, as follows:

"Birch Oil Company, 20.16 acres, valued at .$645,120.00
Fullerton Oil Company, 61.52 acres, valued
    at ..................................$ 34,915.00
Crown of the Valley Oil Company, including
    leasehold interest of the Columbia Oil Pro-
    ducing Company, 108.91 acres, valued at..$132,645.00
Brea Canyon Oil Company, 203 acres, valued
    at ..................................$130,000.00
General Petroleum Company, 80 acres,
    valued at............................$ 48,000.00
Union Oil Company, 670.89 acres, valued at..$244,525.00

Total value of properties, exclusive of the
    Birch property.......................$590,085.00"

It will be observed that the assessment on this 20.16 acres of the appellants' land exceeds by fifty-five thousand dollars the assessment of the entire 1,123.43 acres of the adjoining oil properties, comprising 617 acres of proven or tested oil lands, and producing monthly 215,608 barrels of oil of like character as against 44,686 barrels from the plaintiffs' property.

The only change made in these assessments by the board of equalization was a reduction of forty-five thousand dollars on plaintiffs' lands, and an aggregate increase of $59,490 on the remaining 1,123 acres.

The assessor testified that the basis of his real estate assessments throughout the county was one-third of its cash value; that in assessing oil properties he took into consideration the average production of oil for the three months next preceding March 1st; that he considered in each case the gravity of the oil, the water content, the drilling conditions, the portion of the land actually proven to be oil bearing, as well as the unproven portion of the land and the cost of developing the property, past and present, and probable future production of the property.

[1] All of these elements of value are substantially covered in plaintiffs' evidence, and on the very basis used

by the assessor the excessive and unreasonable disparity between the assessments upon plaintiffs' lands and others of like value and similarly situated is so obvious and inconsistent with any theory of fair dealing that it cannot be reconciled on the mere presumption that the assessor and board of equalization did their duty as they saw it. In the absence of any explanation or justification for this inequality (and there is none offered), it stands out so glaringly and out of all reason that of itself it raises an inference of bad faith.

[2] What the taxpayer is entitled to is the exercise of good faith and fair consideration on the part of the taxing power in assessing his property, at the same rate and on the same basis of valuation as that applied to other property of like character and similarly situated. Inequality of taxation is produced as surely by inequality of valuation as by inequality of the rate of tax. (*Los Angeles Gas & Elec. Co.* v. *County of Los Angeles,* 162 Cal. 164, [9 A. L. R. 1277, 121 Pac. 384].) It is true, as said in the decision last cited, "The board is exercising judicial functions, and its decision as to the value of the property and the fairness of the assessment so far as amount is concerned constitutes an independent and conclusive judgment of the tribunal created by law for the determination of that question," and that this adjudication "cannot be avoided unless the board has proceeded 'arbitrarily and in willful disregard of the law intended for their guidance and control' with the evident purpose of imposing unequal burdens upon certain of the taxpayers . . . , or unless there be something equivalent to fraud in the action of the board." (See, also, *Southern Pac. Land Co.* v. *County of San Diego,* 183 Cal. 543, [191 Pac. 931].)

In the case before us the board of equalization reviewed the action of the assessor and made a reduction of forty-five thousand dollars in the assessments, but, in view of the evidence of comparative values presented on the hearing, its action only emphasizes the apparent lack of consideration given to an equitable equalization of the tax.

This appeal is from a judgment of nonsuit and "all the evidence in favor of plaintiffs must be taken as true, and all the evidence in conflict therewith must be disregarded. 'Every favorable inference fairly deducible and every favor-

able presumption fairly arising from the evidence produced must be considered as facts proved in favor' of the plaintiff and where the evidence is fairly susceptible of two constructions, or if either of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff. If with all these aids the evidence is in such condition that a verdict or decision in favor of plaintiff would be held by an appellate court to have sufficient legal support in the evidence, a nonsuit should not be granted." (*Davis* v. *Crump*, 162 Cal. 513, [123 Pac. 294]; *Freese* v. *Hibernia Sav. & Loan Soc.*, 139 Cal. 392, [73 Pac. 172]; *Goldstone* v. *Merchants etc. Co.*, 123 Cal. 625, [56 Pac. 776].)

"A grossly inequitable and palpably excessive overvaluation" of property for taxation may be held constructively fraudulent. (*First Thought Gold Mines* v. *Stevens County*, 91 Wash. 437, [157 Pac. 1080]; *Southern Oregon Co.* v. *Coos County*, 39 Or. 185, 193, [64 Pac. 646]; *Danforth* v. *Livingston*, 23 Mont. 558, 562, [59 Pac. 916]; *Olympia Water Works* v. *Gelbach*, 16 Wash. 482, [48 Pac. 251]; *Pacific Hotel Co.* v. *Lieb*, 83 Ill. 602, 609; *Keokuck & H. Bridge Co.* v. *People*, 161 Ill. 514, [44 N. E. 206]; *People's Gaslight Co.* v. *Stuckart*, 286 Ill. 164, [121 N. E. 629].)

[3] Respondent seeks to justify the nonsuit in this case on the ground that it was necessary that plaintiffs should have presented their claim or demand to the board of supervisors under the provisions of section 4075 of the Political Code before commencing suit. It would appear from the opinion of the learned judge who tried the case that his decision was largely influenced by this contention.

We do not reach the same conclusion. Section 4075 does not purport to declare what claims shall be presented to the board of supervisors as a prerequisite to bringing suit, but prescribes the manner in which certain claims shall be itemized and presented before the board may pass upon them. It requires that the board shall not "credit or allow any claim or bill against the county or district fund, unless the same be itemized, giving names, dates and particular service rendered, character of process served, upon whom, distance traveled, where and when, character of work done, number of days engaged, supplies or materials furnished, to whom, and quantity and price paid therefor." These

are not particulars which would seem to relate to the sort of demand sued on in this action.

Section 4078 of the same code, which provides when claimants may sue on demands under section 4075, provides that on failure or refusal or neglect of the board to allow or reject a claim for a period of ninety days, the claimant may treat it as rejected and sue the county therefor at any time within six months after the final action of the board.

Section 3819, providing for the recovery of taxes paid under protest, under which this action is brought, makes no reference, directly or indirectly, to any demand upon the board of supervisors, but provides that after the disputed taxes have become payable, and are paid under written protest, the protesting taxpayer may at *any time within six months after such payment* bring his action against the county. (Italics ours.)

If he must first present his claim to the board of supervisors, it is plain that he is precluded from bringing suit at "any time" after payment, and that he could not have the full six months after such payment in which to commence his action.

It was held in *Clear Lake W. W. Co. v. Lake Co.*, 45 Cal. 90, under a special statute for recovering damages from a county for property destroyed by a mob, that the limitation of the time to bring action to six months negatived any presumption that the legislature meant to require the claim to be presented to the board of supervisors before suit was begun.

The reason, moreover, for a previous claim and demand upon the supervisors would seem to be lacking in this class of demands, as the facts upon which they are based must necessarily already have been considered and passed upon by the supervisors as a board of equalization. (*Henne v. County of Los Angeles*, 129 Cal. 297, [61 Pac. 1081].)

*Farmers' & Merchants' Bank v. Los Angeles*, 151 Cal. 655, [91 Pac 795], cited by respondent, was an action brought to recover taxes paid to the city of Los Angeles under protest, and it was there held that the claim should have been presented to the city council before suit was commenced. But that decision was in pursuance of an express provision of the Los Angeles charter that "No suit shall be brought for any claim for money or damages against the

City of Los Angeles . . . until a demand has been presented as herein provided and rejected in whole or in part . . .'' That action was not brought directly under the state law, but under a similar ordinance of the city of Los Angeles, which, of course, was subject to the limitations of the city charter. Under earlier decisions in this state the same rule was applied in suits against a county, but these decisions were under a statute which expressly required such presentation to be made to the board of supervisors in all cases before action could be maintained. (*McCann* v. *Sierra County,* 7 Cal. 121; *Alden* v. *Alameda County,* 43 Cal. 272; *Rhoda* v. *Alameda County,* 52 Cal. 350; *Keyes* v. *San Francisco,* 177 Cal. 313, 319, [173 Pac. 475].) We have no such sweeping requirement at the present time which would hold against a reasonable implication under a special statute to the contrary.

In *Western Ranches* v. *Custer County,* 89 Fed. 577, it was held, under an enactment in Montana similar to section 3819 of our code, that the statute provided a special remedy as to taxes paid under protest and that a condition to bringing suit, not named in the statute, was not required, and that, therefore, the claim did not require presentment before suit.

In addition to the foregoing reasons for holding that the presentation of a claim to the board of supervisors is not necessary, attention may be called to the fact that section 3804 of the Political Code, amended in 1913 by the same legislature that amended section 3819 of the Political Code (Stats. 1913, p. 228, sec. 3804, and Stats. 1913, p. 948, sec. 3819), provided two different methods for the recovery of taxes paid. Section 3804 of the Political Code authorized boards of supervisors to return ''Any taxes, penalties or costs thereon heretofore or hereafter paid more than once, or heretofore or hereafter erroneously or illegally collected, or any taxes heretofore or hereafter paid upon an assessment in excess of the actual cash value of the property so assessed by reason of a clerical error of the assessor, as to the excess in such cases, or any tax heretofore or hereafter paid upon an erroneous assessment of improvements on real estate not in fact in existence when said taxes became a lien, may, by order of the board of supervisors, be refunded by the county treasurer. . . . No order for the

refund of taxes, penalties or costs under this section shall be made except upon a verified claim therefor verified by the person who has paid said tax, . . . which said claim must be filed within three years after the making of the payment sought to be refunded. . . .'' No similar provision is contained in section 3819. There is no authorization to the board of supervisors to refund taxes recoverable under section 3819 and no provision for the filing of a verified claim for the recovery thereof. The fact that in section 3804 express provision is made for the filing of a verified claim for the recovery of taxes so paid is an indication that the legislature did not consider that section 4075 included such a claim. In view of the express authorization in section 3804 to the supervisors to refund such taxes erroneously or illegally collected as therein specified, and the omission of a similar provision in section 3819 of the Political Code, it would seem clear that the filing of such a claim was not necessary under the provisions of section 3819 of the Political Code, even if it is permissible for the board of supervisors to make such a payment upon a verified claim in cases where the tax sought to be recovered comes within the purview of both cases. In such cases the remedy provided by the two sections is cumulative. (*Stewart etc. Co.* v. *County of Alameda,* 142 Cal. 660, 665, [76 Pac. 481]; *Brenner* v. *City of Los Angeles,* 160 Ill. 72, 78, [116 Pac. 397]; *Connelly* v. *City and County of San Francisco,* 164 Cal. 101, 103, [127 Pac. 834]. See, also, *Perrin* v. *Honeycutt,* 144 Cal. 87, [77 Pac. 776].)

In this case the tax being void, section 3819 applies, and suit is authorized without presentation of a verified claim.

The judgment is reversed.

Shaw, J., Wilbur, J., Lennon, J., Shurtleff, J., and Lawlor, J., concurred.