[Civ. No. 5911. First Appellate District, Division One.—December 31, 1927.]

SPRING VALLEY WATER COMPANY (a Corporation), Respondent, v. COUNTY OF ALAMEDA, Appellant.

Earl Warren, District Attorney, and R. H. Chamberlain, Jr., and Frank M. Ogden, Deputies District Attorney, for Appellant.

McCutchen, Olney, Mannon & Greene for Respondent.

PARKER, J., *pro tem.*—This is an appeal by defendant from a judgment of the superior court in favor of plaintiff corporation.

The purpose of the action was to have it judicially determined that certain assessments on water rights theretofore made by the assessor of Alameda County were and are void.

The appeal is upon the judgment-roll alone.

The main question concerns the validity of certain taxes assessed against property of the plaintiff corporation.

As the record here consists only of the judgment-roll, we must take the statement of facts as the same appears in the findings of the trial court.

Plaintiff is a corporation legally organized and existing for the purpose of supplying water to the city and county of San Francisco and its inhabitants. The defendant, County of Alameda, is a political subdivision and public corporation of the state of California, to wit, a county. The Alameda County water district, Niles sanitary district, and Decoto fire district are districts organized and existing under the laws of the state of California providing for the organization of county water districts, sanitary districts, and fire districts respectively. All of the districts named are situated in Alameda County, and the Alameda water district lies entirely within the townships of Eden and Washington in said county. The other districts named lie wholly

within Washington township in Alameda County. For the fiscal years embraced in the action plaintiff paid to, and there were collected by, the tax collector of Alameda County certain taxes levied in behalf of said county, certain taxes levied in behalf of said Alameda County water district, Niles sanitary district, and Decoto fire district, respectively, and all of said taxes were paid by the tax collector into the treasury of Alameda County. The treasurer credited the proper account of each district with the amount of taxes collected for it, all pursuant to law, and since the collection and distribution aforesaid all of said taxes have been withdrawn and spent by the respective districts.

Without following the exact language of the findings, the essential facts relative to the property or rights subjected to the taxes thus collected may be summarized.

The plaintiff, Spring Valley Water Company, is the owner of the right to divert from Alameda Creek and its tributaries water to the amount of 21,500,000 gallons daily and use the same for business, commercial, and other nonriparian and beneficial purposes, and under and pursuant to such right is and since long prior to March, 1922, has been diverting said amount of water from said creek, or the full flow of the creek when such flow was less than said amount, and using the same for said purposes. The points of diversion are and always have been without the territorial limits of the districts named hereinbefore and for the benefit of which said districts the tax is levied and collected. The amount of 21,500,000 gallons of water daily is equal to or exceeds the usual or normal flow of said creek, and plaintiff has never diverted water from said creek in excess of said amount. Plaintiff also has certain storage rights entitling it to impound and divert all of the waters of said creek excepting certain varying amounts, which it is required to release from storage and allow to pass down the creek for the purpose of replenishing underground waters below its dam. Plaintiff has constructed a large reservoir known as Calaveras Reservoir, and by means of said reservoir and its diverting works plaintiff is about to divert water from Alameda Creek in addition to the amount of 21,500,000 gallons daily. Neither the reservoir

nor the point of diversion of the additional amount of water is within the territorial boundaries of any of said districts, and plaintiff has not at any time diverted water from Alameda Creek or any of its tributaries at any point within any of the districts named.

Plaintiff does own certain lands within the limits of the district, and as a part and portion thereof owns certain riparian rights. It is conceded, however, that this ownership is not in the slightest involved in the issues here for determination. The fact is mentioned solely to indicate that all the facts found have been considered; therefore no further mention will be made of this fact, and what follows will proceed as though this fact had not been found.

Plaintiff at no time has been the owner or claimed to be the owner of any right to divert water from Alameda Creek or any of its tributaries within any of the said districts named.

This finding, that plaintiff at no time has been the owner of any water right within the district, or claimed to be such, is attacked by appellant here; and it is argued that the facts following indicate and determine the fact to be an erroneous conclusion from the admitted facts.

In 1910 and prior thereto, through various and sundry conveyances, agreements, and condemnation proceedings, for each of which plaintiff paid valuable consideration, plaintiff acquired from the respective owners thereof and as against all lands riparian to Alameda Creek lying within said districts the right to divert water from Alameda Creek for business, commercial, and nonriparian purposes. The material portions of a very large number of said conveyances and agreements were as follows:

The grantor does grant unto Spring Valley Water Company all riparian rights in the water of said stream which are vested in the said grantor, and as against the said grantor, his heirs, etc., and as against the lands; the right at the pleasure of said grantee, its successors, etc., to impound, appropriate, divert, and take the waters of said Alameda Creek and of any and all the tributaries and feeders thereof, to the uses and purposes of the waterworks of said grantee, its successors, etc., and by means of a dam or dams erected across the said creek or any of its

tributaries at any point or points at or above the inlet of the Vallejo Mill Stone Chute (but not at any point below said inlet), and of such conduits as it shall erect to divert the waters out of said stream for the uses and purposes aforesaid.

The material portions of the remaining conveyances, with a few excepted, read exactly the same with this added, namely: "But this grant shall be and is hereby limited to the waters which shall be above the inlet of the Vallejo Mill Stone Chute specified above as the point of diversion, and shall not apply to any of the waters of said creek or of its tributaries which shall be below the said inlet of said Vallejo Mill Stone Chute."

In a few instances the conveyances and agreements contained no express provision limiting the place at which the plaintiff might make its diversions from Alameda Creek. The point mentioned in the conveyances and agreements as the inlet of the Vallejo Mill Stone Chute is and at all times was outside any of the districts named.

All lands riparian to Alameda Creek or any of its tributaries and lying within any of the districts named have been regularly assessed without any exclusion of or on account of the riparian rights incident thereto.

The trial court found further, predicating its finding upon the facts as stated, that the water rights taxed are not now and at no time have been, either in whole or in part, within the boundaries of either of said districts.

It was the judgment of the court below that plaintiff recover the sums it had paid into the treasury of defendant county. From this judgment defendant appeals.

It is the contention of appellant that plaintiff is the owner of the water rights within the districts named. Appellant's position is stated as follows: "It is obvious that since all the riparian owners have conveyed away to respondent all of their riparian rights and their rights to object to the taking of water, it is immaterial as to what point respondent makes the diversion thereof. Although the actual point of diversion be outside the boundaries of the districts, if the company has the RIGHT to divert the water within the districts it is a taxable property right therein."

Appellant further contends that respondent company's right to divert water from Alameda Creek is based upon the rights acquired by the various conveyances above mentioned from every riparian owner on the creek within the districts; and that by means of these conveyances respondent acquired a definite property right separate and distinct from the individual riparian rights of the owners, but which right is nevertheless situated for the purposes of taxation along the entire length of the creek, "since it arises out of and is based upon the acquisition of the rights appurtenant to the riparian lands."

We have in this case a finding that all riparian lands in the districts have been assessed without exclusion or deduction of or on account of the riparian rights incident thereto, and taxes for the full amounts according to such assessments were levied and collected upon said lands on behalf of the districts named.

The rights assessed, toward which the entire inquiry is directed, are described as "the right to divert for business and commercial purposes." It has been held in California that an assessment of riparian lands includes the riparian water rights if there is nothing appearing in the assessment-rolls denoting a contrary intention (*Spring Valley Water Co.* v. *County of Alameda,* 24 Cal. App. 278 [141 Pac. 38]). Therefore, under the finding of fact heretofore referred to, we must conclude that when all of the lands riparian to Alameda Creek were assessed at their full cash value (Pol. Code, sec. 3627), without exclusion or deduction of or on account of the riparian rights, the said rights were included in the assessment; and from the further finding that the taxes levied pursuant to said assessment have been paid we conclude the taxing power exhausted.

The question as to whether or not riparian rights may be taxed as separate from the riparian lands is not before us for determination. Nor does the question demand or require any exhaustive or analytical review of the authorities on the law of riparian rights. The view of the highest court of our state has been announced in the Herminghaus case, 200 Cal. 81 [252 Pac. 607]. In general, we may say that the right to the use of the watercourse, *ex jure natura,* or as incident to the land, under the common

law, is subject to be abridged, enlarged, or modified by grant. But the extent of such abridgment, enlargement, or modification is to be measured by the express stipulation contained in the grant or instrument of conveyance itself. A riparian owner may grant the right to the use of water as permitted him under the common-law rules to another, and as between himself and his grantee such a deed is binding (Kinney on Irrigation and Water Rights, secs. 530, 533).

Taking the grants in the present case we find that, while a comparatively small number did not restrict or limit the right granted, by far the greater number of grants did contain such a restriction. While it may be conceded that certain owners of lands riparian to Alameda Creek did convey to plaintiff their riparian rights in, of, and to said creek, yet the effect of this grant would be to convey only the rights of the particular grantors. One riparian owner or any number of riparian owners less than all could not, by grant or otherwise, extinguish or diminish the riparian rights attaching to the lands of other nonconsenting riparian owners. Therefore, as far as plaintiff in the instant case acquired any rights by a purchase from all the riparian owners, the sum total of the rights acquired by plaintiff would be limited by the restrictions of a particular grant. This would be apparent from the very nature of the riparian right, for the reason that, assuming there were twenty riparian owners on a stream, the grant or deed of nineteen of these owners could not destroy the right of the remaining one, and whatever property the grantee of these nineteen might obtain through the grant would still be subject to the riparian claim of the remaining nonconsenting owner (*Duckworth* v. *Watsonville etc. Co.*, 150 Cal. 526 [89 Pac. 338]). When plaintiff here had purchased the riparian rights of all of the lands riparian to Alameda Creek we find it had the right restricted by this provision: "But this grant shall be and is hereby limited to the waters which shall be above the inlet of the Vallejo Mill Stone Chute specified as the point of diversion, and shall not apply to any of the waters of said creek, or of its tributaries, which shall be below said inlet of said Vallejo Mill Stone Chute." It is a found fact that the point of diversion thus specified

is beyond and without the territorial limits of any of the districts named. It is evident from such a deed that the grantor did not grant his entire riparian right, but merely impaired and abridged his right to the extent specified, namely, that he by grant permitted his grantee to divert the waters of the stream at a given point thereon. ■ It needs no citation of authority to support the proposition that the grantor, riparian owner, could insist upon and enforce as against his grantee a full enjoyment of his riparian right restricted only by the terms of his grant, and that if diversion were made at any point other than specified the riparian owner could enjoin the same.

Appellant cites authority to the effect that the point of diversion or place of user may be changed by the owner of a water right when no one could be injured thereby. This doctrine is not questioned here, but its application is not discernible. Here the point of diversion is restricted by the grant, and to a great extent constitutes the grant. The control of the grantee is not absolute, and the enjoyment of his right is based, not upon his own appropriation, or his own independent claim of user, but solely upon his limited grant.

■ Appellant throughout bases his contention upon the theory that the rights of plaintiff, Spring Valley Water Company, include the right to divert water at any point on the stream; and appellant derives this theory from its assumption that plaintiff is the owner of all of the riparian rights on the stream. We think appellant has based his contention upon an unsound premise. As indicated, plaintiff has under the grants a restricted right not embracing all of the riparian rights in Alameda Creek. What the plaintiff did acquire by these grants was exactly what the court found, to wit, the right to divert water from Alameda Creek for business, commercial, and nonriparian purposes at a specified point on said creek without the territorial limits of the districts here involved.

Much has been written of and concerning the riparian right as such. It is difficult, if not impossible, to state clearly the extent of this right in all of its possible variety. The case noted hereinbefore, *Herminghaus* v. *Southern California Edison Co.,* 200 Cal. 81 [252 Pac. 607], after an

exhaustive review of the subject, at page 103, thus defines the riparian right: "As such riparian owners said plaintiffs are abstractly entitled to the reasonable use of said waters of said river at all seasons of the year. Their right thereto is to the usufruct of said flowing stream in the usual and ordinary course of its flow, and this right is a vested right inherent in the soil of their said lands and not a mere incident or appurtenant thereto. It is a right which is neither gained nor lost by use, or disuse abstractly, and in the absence of adverse rights gained by others by prescription or their loss by laches creating an estoppel. . . . It is a right which they partake of in common with other riparian owners along said stream entitled to a similar usufruct in its waters. It is a right which appropriators of water from said stream do not . . . share with riparian owners thereon in the absence of rights to the use of said waters gained by such appropriators by grant or by prescription." Also *Fall River Co.* v. *Mount Shasta Power Co.*, 202 Cal. 56 [56 A. L. R. 264, 259 Pac. 444].

Conceding, as we must, that this accurately and fully defines the right, it follows that the riparian right as such is a right to the usufruct inherent in the lands.

It has been stated: "Riparian rights incident to or appurtenant to no land cannot exist. The right is incident to the land, belongs to it by nature. We have not found any case holding that it may be severed from the right to the abutting land so as to become a right in gross." (*Lake Superior Land Co.* v. *Emerson*, 38 Minn. 406 [8 Am. St. Rep. 679, 38 N. W. 200].) While this was stated in 1888, many years ago, it was written of and concerning a doctrine of very ancient origin, and it is applicable in the main now as it was then. However, and not altogether in conflict with this idea, the California courts have held that the riparian right may be separated from the ownership of the soil, though the said courts have not held that there may be two separate and distinct rights in the soil and in the water and each of these rights classed as riparian. In *Gould* v. *Stafford*, 91 Cal. 155 [27 Pac. 545], it is said: "The right of a riparian proprietor to the flow of a stream of water over his land is an incident of his property in the land, is annexed to the land and considered part and parcel of

it, but may be severed or segregated from the land by grant, by condemnation or by prescription. If, therefore, a riparian owner grants away all or any portion of his riparian right he thereby to the extent of such grant severs from the land his riparian rights."

In *Yocco* v. *Conroy*, 104 Cal. 471 [38 Pac. 108], this language is used: "To whatever extent the riparian owner granted the use of the waters of the stream, to the same extent he parted with his right to divert or use that water to the detriment of his grantee."

We conclude from the cases cited and from the very nature of the riparian right as defined and recognized that while a riparian owner may by grant, laches sufficient to create an estoppel, or by prescription lose his riparian rights as such, and thus cause a severance of the right from the land, nevertheless the severed right, apart from and distinct from any claim of ownership in or to the land, cannot be classed as a riparian right, a part and parcel of the soil. In other words, to class this severed right as riparian would be to hold that, being separate and apart from the land, it exists because it is a part and parcel of the land from which it is severed—being an illustration of exquisite folly resulting from wisdom too finely spun. If, as generally held, the right of a riparian owner includes and consists mainly of the right to have the water of a stream to which his land is riparian flow down the natural channel to his land unobstructed and unpolluted, it would seem manifest error to conclude that this right could be exercised and enjoyed by a diversion of the waters in a manner wholly preventing the waters from ever reaching the lands to which it was attached.

It follows, therefore, that the effect of a grant of riparian rights as separate from the land is as stated in *California etc. Co.* v. *Madera Irr. Co.*, 167 Cal. 86 [138 Pac. 721], as follows: "The effect of such a grant is simply to convey the grantor's right to the use of the water on his own riparian land, and to estop the grantor to complain against any use of the water which the grantee may make to the injury of such riparian right. Such estoppel is effective as to the whole riparian right of the grantor simply because of the terms of his purported grant thereof. By

reason of his voluntary act he has waived for himself and his successors all claims based on the doctrine of riparian rights, and is in no position to complain of any invasion thereof by the grantee or his successors." See, also, 26 Cal. Jur., p. 216.

Without further citation we conclude that when plaintiff herein acquired the riparian rights so called, limited as they were to the place of enjoyment specified, the exact estate or interest acquired consisted of a waiver on the part of the several riparian land owners to insist upon their riparian rights. In other words, to the extent in the grant restricted, each riparian owner granted to plaintiff the right existing in the grantor to demand the entire flow of the stream in its natural course down to the riparian lands. Therefore, when plaintiff made actual diversion of the waters of Alameda Creek at a point above the lands of the consenting land owners and, as found here, devoted the waters to a useful nonriparian use, the right of plaintiff was and is in no sense riparian, but it is a separate and individual right, the enjoyment of which is permitted by the grant waiving the right of the lower riparian owner to enjoin the use.

In passing, however, it may be said that this self-created estoppel runs not merely against the consenting riparian owner but likewise against the riparian lands. *Arguendo*, it could perhaps be urged, therefore, that such a result could only demonstrate a transferred interest in the lands. However, this opportunity for debate represents one of the difficulties encountered in the attempt to preserve individual property rights and promote agricultural development in the face of an established policy which only too frequently militated against the latter. See *Gould* v. *Stafford*, 91 Cal. 146 [27 Pac. 543].

With reference, then, to the right of plaintiff herein to divert the waters of Alameda Creek at a point without the territorial limits of the districts involved, and to put the waters diverted to nonriparian uses without the said districts, we hold that the situs of that right on the stream is at the point of actual diversion and not within the territorial limits of any of the districts named.

The appellant contends further that the right necessarily and inherently is a right in the stream, and therefore extends to the entire stream throughout its length and flow. In answer to this we have the court's finding that the diversion of plaintiff exhausts the stream at the point of diversion, from which it would appear that there is no stream to which the right could thereafter attach itself. Passing this, however, we are not prepared to hold that a right of diversion in a stream extends throughout the entire length of the stream for purposes of taxation. If we did adopt this view it might follow that a water user in a stream rising in one county and flowing down through several other counties would be subject to taxation in every such county. While, as stated, in theory a water user may be said to have some sort of inchoate right in the entire stream, the question arises as to the extent of that right in any portion of the stream below his point of diversion. Repeating, we hold that the situs of the right here involved is at the place of its enjoyment, namely, at the point of diversion. Conceding, as claimed by appellant, that a right may be taxed even if not enjoyed, nevertheless when the right and the actual user thereof combine the necessity of speculating upon the situs of an unenjoyed right does not arise. The use locates the right.

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 27, 1928.

All the Justices present concurred.