[Civ. No. 5918.   Fourth Dist.   Feb. 9, 1959.]

THE CITY OF LOS ANGELES et al., Appellants, v. COUNTY OF INYO, Respondent, and Consolidated Case.

Roger Arnebergh, City Attorney (Los Angeles), Gilmore Tillman, Chief Assistant City Attorney for Water and Power, A. H. Driscoll, Assistant City Attorney, and O. M. Lloyd, Deputy City Attorney, for Appellants.

Boyd A. Taylor, District Attorney (Inyo), for Respondent.

MUSSELL, Acting P. J.—This is an appeal from a judgment in two actions, consolidated for trial, brought by appellants city of Los Angeles and the Department of Water and Power of said city (hereinafter collectively referred to as the "City") for the recovery of taxes paid under protest to the county of Inyo (hereinafter referred to as the "County") for the tax years 1955-1956 and 1956-1957. Before paying these taxes, the City made appropriate application to the State Board of Equalization for relief from the assessments. A hearing was had before said board and an opinion was rendered and filed by it ordering an adjustment, reduction and correction of said assessments. The causes were submitted to the trial court on the record of the proceedings before the State Board of Equalization and the trial court rendered judgment that the City take nothing by the action.

738

The issues involved herein relate to the assessment of taxable water rights owned by the City and formerly appurtenant to three residential lots in the town of Independence. The City contends that each of these water rights has been subjected to an excessive and discriminatory assessment by the arbitrary action of the county assessor in fixing said assessment at an amount equivalent to 25 per cent of the assessed value of the lot to which said water rights were formerly appurtenant, plus 25 per cent of the assessed value of the improvements on said lot.

In 1913 the City completed an aqueduct to convey the waters of the Owens River, in Inyo County, to the City of Los Angeles for the purpose of supplying it and its inhabitants with water. Prior to the construction of the aqueduct, the City purchased substantially all riparian lands and water rights on the Owens River downstream from the point at which the waters of said river were diverted into the aqueduct. As a result of the passage of the "Reparations Act" (Stats. 1925, ch. 109) and pending and threatened litigation, the City undertook the acquisition of all property in the Owens River Valley remaining in private ownership. The City caused an appraisal to be made of all property in Bishop, Laws, Big Pine, Independence and Lone Pine. The City then purchased 3,000 parcels of land both within and without these towns, adding up to 40 per cent to the appraised value in an attempt to compensate the property owners not only for the land and improvements purchased but also for all other claims, including those recognized by the Reparations Act. Each of these purchases included a release of the City from any damages claimed under the said Reparations Act. However, there are more than 100 lots in Independence which the City did not acquire. Where only the water rights were purchased, as a consideration therefor, the City paid the seller 25 per cent of the value of the lots and improvements, and the written agreements for the sale of the water rights gave the sellers the option, to be exercised within a period of five years, to sell to the City the real property at sums which represented the balance of 75 per cent of the value. The conveyances granted to the City all water rights appurtenant to the lots, including riparian and appropriative rights, together with the right to divert underground as well as surface waters. The seller was permitted "the right to develop and use upon said lands described herein but not elsewhere any portion thereof re-

maining of the surface or subsurface waters thereof for household, domestic or gardening purposes thereon.''

In 1931 each of the owners of the water rights here involved and the lots to which water rights were then appurtenant accepted from the City an amount equal to 25 per cent of the City's appraised value of the land and improvements thereon, in consideration of a release of the City from any claims for damages under the said Reparations Act and a conveyance to the City of the water rights appurtenant to the lot, reserving to the seller the right to develop and use upon said land described herein but not elsewhere any portion thereof remaining of the surface or subsurface water thereof for household, domestic, or gardening purposes thereon.

The history of the assessments on the three lots and water rights involved is as follows:

| Tax Parcel No. | Year | Land With Water Rights | Land Without Water Rights | Water Rights | Total of Land and Water Rights |
|---|---|---|---|---|---|
| 2-033-1 | 1952-4 | $260.00 | | | $260.00 |
| | 1955 | | $280.00 | $350.00 | 630.00 |
| | 1956 | | 280.00 | 350.00 | 630.00 |
| 2-102-4 | 1952-4 | 300.00 | | | 300.00 |
| | 1955 | | 350.00 | 610.00 | 960.00 |
| | 1956 | | 350.00 | 610.00 | 960.00 |
| 2-102-5 | 1952-4 | 250.00 | | | 250.00 |
| | 1955 | | 250.00 | 450.00 | 700.00 |
| | 1956 | | 250.00 | 450.00 | 700.00 |

The record shows that there are approximately 700 separate lots or parcels in the town of Independence. All lots in the town except the three involved herein were assessed in 1955 and 1956 on a uniform basis and in amounts comparable to the assessments in the above history for the years 1952-1954. In the block which contains tax parcel 2-033-1, and in all adjacent blocks, the corner lots are assessed at $280 each and all inside lots at $250 each and, except as to the above tax parcel, all such assessments included all water rights. The assessments on each of the three lots in question, including separately assessed water rights, are far in excess of the assessment on any other lots of similar value in the town and the assessment on the water rights exceed the assessment of the fee ownership and water rights of all other lots.

It is the contention of the City that each of the water rights involved has been subjected to an excessive and dis-

criminatory assessment and we are in accord with this contention.

In *Birch* v. *County of Orange*, 186 Cal. 736, 741 [200 P. 647], it was held that the taxpayer is entitled to the exercise of good faith and fair consideration on the part of the taxing power in assessing his property, at the same rate and on the same basis of valuation as that applied to other property of like character and similarly situated, and that inequality of taxation is produced as surely by inequality of valuation as by inequality of the rate of tax. Citing *Los Angeles Gas & Elec.* *Co.* v. *County of Los Angeles*, 162 Cal. 164 [121 P. 384, 9 A.L.R. 1277]. And in *Birch* v. *County of Orange*, 88 Cal. App. 82, 85 [262 P. 788], it is said that in determining whether an unequal burden of taxation has been placed upon him, a complaining taxpayer's assessment is to be compared with the average assessment of all other property in the county. (Citing cases.)

In *Rancho Santa Margarita* v. *County of San Diego*, 126 Cal.App. 186, 197 [14 P.2d 588], the court said:

"It is a fundamental rule that a tax, to be valid, must be equal as to its burdens and uniform as to its operation. Property must be assessed according to a just and uniform standard of value and the rate must be levied uniformly. In considering the validity of a revenue law it is immaterial whether the inequality or lack of uniformity in the levy is the result of design, accident or inadvertence."

In *Mahoney* v. *City of San Diego*, 198 Cal. 388, 404 [245 P. 189], it was held that there is no other or different immunity available to boards of equalization than those which are available to assessors when the acts of the former are found to be arbitrary and when the proven discriminations and inequalities of the latter in making assessments are perpetuated thereby; and that the courts will grant relief in the one case as readily as in the other when the record before them justifies the granting of such relief.

In the instant case many corner lots in Independence are assessed at $280 and inside lots at $250. These assessments include the water rights, since there is nothing appearing in the assessment rolls denoting a contrary intention. (*Spring Valley W. Co.* v. *County of Alameda*, 88 Cal.App. 157, 163 [263 P. 318].) The water rights assessed to the City without fee ownership of the lots involved are assessed at from $350 to $610 and the assessments on these water rights, plus assessment on the fee ownership, aggregate from $630 to $960, nearly

three times the assessment on any other comparable property in Independence.

In this connection witness Sidney Parratt, district engineer for the Los Angeles Aqueduct Division of the Department of Water and Power of the City, testified that

"Buyers and sellers of lots in the Town of Independence have likewise placed no value upon such water rights as purchases and sales of comparable property with and without water rights have been made at comparable prices. For example, in 1953, the City sold some town lots in all four Owens Valley towns, namely, Independence, Lone Pine, Big Pine and Bishop, at public auction, and all of said lots were sold at market prices comparable to the sales of similar lots with water rights attached. Subsequent resale of said lots have been made at the same or higher prices than those which were obtained by the City."

This testimony is uncontradicted and indicates to some extent the value placed on the water rights.

The record shows that the assessor determined the amount of the assessment for each of the water rights involved by adding the aggregate annual assessments on the lot to which the water right was appurtenant before it was severed and the aggregate annual assessments on the improvements thereon for the years 1932 to 1955, inclusive, and assessing the water right in an amount equal to 25 per cent of the sum of those aggregate annual assessments; thus treating the water rights for the years prior to the year 1955 as having escaped assessment within the meaning of section 531 of the Revenue and Taxation Code. However, the proper entry on the roll for that was not made as required by section 533 of said code, which provides that "Property escaping assessment shall be entered on the roll prepared in the assessment year when it is so discovered, and if this is not the roll for the assessment year in which it escaped assessment, the entry shall be followed with 'Escaped assessment for the year 19—.' "

The State Board of Equalization in its opinion and order herein concluded that the City's water rights did not escape assessment for the years prior to 1955 and that to assess them now pursuant to section 531 of the Revenue and Taxation Code would result in double taxation and would be improper; that for the years from 1932 to 1954, inclusive, the assessments on the rolls for the three parcels involved did not show that the City's water rights were excluded; that consequently the water rights were included in the assessments of the lands.

Citing *Spring Valley Water Co.* v. *County of Alameda*, 24 Cal.App. 278 [141 P. 38]. This conclusion is supported by the record and we are in accord therewith.

It is well settled that water rights are as separately assessable as land. *City & County of San Francisco* v. *County of Alameda*, 5 Cal.2d 243 [54 P.2d 462]; *Waterford I. Dist.* v. *County of Stanislaus*, 102 Cal.App.2d 839 [228 P.2d 341].) In *Alpaugh Irr. Dist.* v. *County of Kern*, 113 Cal.App.2d 286 [14] [248 P.2d 117] it is said that in assessing a water right it may be necessary to adopt a method different from that commonly used in assessing land and it cannot be said as a matter of law that the assessor used an invalid method in arriving at the assessed value of an irrigation district's water rights by taking the number of acre feet of water which it exported, multiplied by the net value of the water per acre foot, etc., where he testified that this method is comparable to that used in assessing oil and gas rights.

In the instant case the State Board of Equalization concluded that the assessor's method of valuing the water rights for the purpose of assessment does not conform to accepted standards and processes but held that

"The method of arriving at the value of property is committed to the assessor's discretion, in the absence of fraud, and is to be used according to his best judgment. *Utah Construction Co.* v. *Richardson*, 187 Cal. 649 [203 P. 401]. As stated in *Miller & Lux, Inc.* v. *Richardson*, 182 Cal. 115 [187 P. 411], '. . . the discretion of the assessing officials as to the valuation to be fixed is final in the absence of fraud or mistake . . . In order that there be fraud, there must exist, on the part of the assessing official, a conscious failure to exercise that fair and impartial judgment which the law requires of him.'

"It is presumed that the assessing officer has properly performed the duties entrusted to him and that his assessments are regularly and correctly made. *Utah Construction Co.* v. *Richardson, supra.* The burden of showing that the assessment is incorrect is one on the petitioner. *Hammond Lumber Co.* v. *County of Los Angeles*, 104 Cal.App. 235 [285 P. 896]; *Wild Goose Country Club* v. *County of Butte*, 60 Cal.App. 339 [212 P. 711]."

We conclude that the evidence herein shows that the method followed by the assessor was incorrect and resulted in an excessive assessment of the City's water rights. All water rights in the town of Independence were not assessed uniformly. Town lots in Independence, including water rights,

were assessed on a uniform basis except for the three lots here involved, which, including the separately assessed water rights, were assessed at two and one-half to three times the assessments on any other lots. These assessments were in our opinion discriminatory, excessive and invalid.

Judgment reversed.

Shepard, J., and Stone, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.