[Civ. No. 19503. First Dist., Div. Two. June 21, 1961.]

GUNTHER ALBERTS et al., Appellants, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF SAN MATEO et al., Respondents.

Caspar W. Weinberger, Alvin H. Baum, Jr., Heller, Ehrman, White & McAuliffe and Howard S. Burnside for Appellants.

Keith C. Sorenson, District Attorney, and Frank Piombo, Deputy District Attorney, for Respondents.

KAUFMAN, P. J.—This is an appeal from a judgment denying relief against allegedly discriminatory assessments for the 1959-60 fiscal year on residential lands owned by the 105 appellants in San Mateo County. The action was brought in the court below upon the theory that the failure of completion of the reappraisal of the entire county was a discriminatory assessment practice. Relief was sought in the alternative as follows: (1) writ of mandate compelling the board of equalization to order the assessor to reduce the assertedly discriminatory assessments to the level existing prior to the increase; and declaring that all changes in valuations pursuant to a

county-wide program of reassessment of residential lands are void and unconstitutional and shall not be added to the assessment roll until the entire program for all lands in the county is completed; or (2) writ of certiorari to review and annul or otherwise correct the action of the board of equalization.

Respondents filed their answers denying that any inequality in the assessments of the appellants' lands were shown before the board of equalization and alleged as two separate and distinct affirmative defenses that: (1) the evidence before the county board of equalization did not disclose any inequality of assessments between the appellants' property and other comparable property within the county; and (2) the appellants had an adequate remedy, i.e., the payment of taxes under protest and a suit to recover said taxes.

The record of the proceedings before the board of equalization, as well as the minutes of the board and the appellants' original verified petitions, were introduced at the trial. The court found the following facts: that for the fiscal year 1959-60 the assessor of the County of San Mateo reappraised and increased the land assessments on the land of the appellants and other lands in the southern part of the county and a portion of the northern part of the county, while land assessments in the remaining parts of the county were not reappraised and increased; that appellants filed verified petitions before the board of supervisors, sitting as a board of equalization seeking reduction in the amount of assessments on their lands to the level of assessments existing prior to the increases in assessments; that hearings before the county board of equalization on said petitions were held on July 13, 1959, and July 20, 1959, and evidence introduced by both parties.

The board of equalization, after hearing said matter, denied all the petitions. Thereafter, on August 12, 1959, the appellants filed their joint petition herein. No evidence was introduced before the county board of equalization to show the fair market value of the appellants' land or the fair market value of any other comparable land in the County of San Mateo, nor was any evidence presented before the county board of equalization showing the assessed value of lands other than those of the appellants. The evidence before the county board of equalization did not show any inequality existed between assessments of the lands of appellants and any other comparable lands in the County of San Mateo as said assessments appeared on the 1959-60 assessment roll. The evidence before the county board of equalization did not show that the

appellants suffered damage in any manner by said assessments on their land, or that they were thereby required to bear an unequal share of the tax burden of the County of San Mateo; and that the evidence introduced before the county board of equalization and before the trial court did not show that the county board of equalization acted in excess of its jurisdiction in denying the appellants' petitions.

The court further found that no evidence was introduced showing that the action of the county board of equalization, in denying relief to the appellants resulted from abuse of discretion or from fraud or something akin to fraud on the part of the respondents or any of them, and that the decision of the county board of equalization in denying relief to the petitioners was supported by substantial evidence. From these findings, the court concluded that the appellants herein are not entitled to the relief requested and entered judgment accordingly. A motion for a new trial was denied on April 25, 1960, and this appeal ensued.

On appeal, it is argued that the court erred in denying appellants' petition because: (1) the board of equalization failed to perform its statutory and constitutional duty to "equalize" the assessments of the appellants' lands with assessments of other like lands in the county because the assessment procedure which resulted in higher taxes for the appellants was discriminatory and unconstitutional; (2) that the board's action in knowingly approving residential land assessments based on a different method for the northern and southern part of the county was discriminatory and against the latter was "intentional" and equivalent to fraud; and that (3) the appellants were entitled to the relief requested, as they were not only seeking financial relief for themselves but a declaration of the impropriety of the entire assessment procedure which affects all owners of residential lands in the county.

Boards of equalization are quasi-judicial bodies established by law to remedy excessive assessments made by the assessor. (*Merchants Trust Co.* v. *Hopkins,* 103 Cal.App. 473 [284 P. 1072].) It is well settled in this state that to the authorized county board of equalization has been confided the duty of determining the value of the property under consideration for assessment purposes upon such basis as is used in regard to other property, so as to make all the assessments as equal and fair as practicable. In discharging this duty, the board is exercising judicial functions, and its decision as to the value of the property and the fairness of the

assessment so far as amount is concerned constitutes an independent and conclusive judgment of the tribunal created by law for the determination of that question, adjudicating necessarily that the property is assessed at the same value proportionately as all other property in the county. Such adjudication cannot be avoided unless the board has proceeded arbitrarily and in wilful disregard of the law intended for their guidance and control, with the evident purpose of imposing unequal burdens upon certain taxpayers or unless there be something equivalent to fraud in the action of the board. Mere errors of honest judgment as to the value of the property will not obviate the binding effect of the conclusion of the board. The fundamental premise of the appellants' recourse to the court for relief rests upon the proposition that, as with any ad valorem tax their constitutional right to an equalization hearing comprehends a decision *in the light of the evidence there introduced. (Universal Consol. Oil Co.* v. *Byram,* 25 Cal.2d 353 [153 P.2d 746]; *Flying Tiger Line, Inc.* v. *County of Los Angeles,* 51 Cal.2d 314, 320, 321 [333 P.2d 323].)

Thus, in determining this appeal, we are met by the presumption of the regularity of the result reached by a judicial body. The question, therefore, is whether in the light of the evidence introduced before the board of equalization, there is any evidence of the discriminatory assessment practice complained of by the appellants, and whether there was evidence of sufficient substantiality before the county board of equalization to justify its finding, keeping in mind that in the absence of fraud or malicious or arbitrary use of its powers, the board is the sole judge of questions of fact and of the values of property (*Bank of America* v. *Mundo,* 37 Cal.2d 1, 5 [229 P.2d 345]).

 Appellants' petition alleges that at the hearing before the board, the latter ". . . was shown that the Petitioners' lands were increased to and assessed at 25 percent of market value under the respondent Assessor's program of county-wide reassessment, while other sections of the county were assessed at less than 25 percent of market value, and that the assessed values of such other sections of the county would also be increased to 25 percent of market value upon completion of the reappraisal program, the object of the county-wide reappraisal program being to bring the assessed value of all residential lands up to this required level of assessment."

The only evidence in the record as to the proportion of land in San Mateo County assessed at 25 percent of market value [as was the appellants'] was the statement of the assessor that the majority of the county was around 25 percent. Appellants concede that over two thirds of the county was reappraised for 1959-60, but assume that the assessments in the areas not reappraised were at less than 25 percent of market value. We can find no evidence in the record to sustain this assumption. Rather, the chief supervising appraiser testified that the reappraisals were made where the need was greatest, and the county assessor testified that the reappraisal program was made pursuant to a plan to bring the entire county to an assessment level of 25 percent of market value. The record here is devoid of any evidence of the market value of appellants' lands allegedly assessed at a higher ratio, even though the appellants were specifically invited to produce such evidence.

Appellants, however, argue that they do not have to show inequality of assessments as the basis of their position is that the county assessor entered upon a program of reassessment of all of the residential land throughout the county and having done so, it was illegal to add to the assessment roll any of the increased valuations until the program had been fully completed.

The identical arguments were made below, and rejected by the trial court in its memorandum opinion which pointed out that it could find no authority in support of appellants' contention, and that *Wild Goose Country Club* v. *County of Butte,* 60 Cal.App. 339 [212 P. 711] and *Alpaugh Irr. Dist.* v. *County of Kern,* 113 Cal.App.2d 286 [248 P.2d 117] were opposed to it.

Appellants, however, argue that the above and other California authorities such as *Crothers* v. *County of Santa Cruz,* 151 Cal.App.2d 219 [311 P.2d 557], *Bank of America* v. *Mundo, supra,* are not applicable, because all of these cases involve only "simple" overvaluations, while the appellants' case is unique in this state, because the appellants are attacking errors in the basic method of assessment which has caused the improper valuation of their lands, i.e., the assessor's revaluation of only part of the county in one single fiscal year. Appellants rely entirely on *McCluskey* v. *Sparks* (1955), 80 Ariz. 15 [291 P.2d 791]; *Sparks* v. *McCluskey* (1958), 84 Ariz. 283 [327 P.2d 295].

While we agree with the appellants as to the uniqueness and

novelty of the argument raised here, we do not agree with their conclusion. We find no fault with the legal propositions of *McCluskey* v. *Sparks, supra; Sioux City Bridge Co.* v. *County of Dakota,* 260 U.S. 441 [43 S.Ct. 190, 67 L.Ed. 340, 28 A.L.R. 979] ; *Southern Pac. Land Co.* v. *County of San Diego,* 183 Cal. 543 [191 P. 931] ; *Blinn Lbr. Co.* v. *County of Los Angeles,* 216 Cal. 474 [14 P.2d 512] ; *Mahoney* v. *City of San Diego,* 198 Cal. 388 [245 P. 189] ; *Birch* v. *County of Orange,* 186 Cal. 736 [200 P. 647] ; and *City of Los Angeles* v. *County of Inyo,* 167 Cal.App.2d 736 [335 P.2d 166], and other authorities cited by the appellants. However, all of these cases bear on the question of the over-assessment of the taxpayers' property as compared with similar property, and hence are not applicable here.

Here, the appellants have shown no discrimination or fraud or limited use of a special formula, nor did they ask that all other property be immediately raised in assessed value. On the contrary, the appellants concede that after the allegedly discriminatory assessment for 1959-60, their lands were assessed at 25 percent of market value. As their petition alleges that to reach the 25 percent of market value assessment level, their assessments were increased from 100 percent to 250 percent, it would appear that until the reassessment complained of, the appellants' lands were not equalized among themselves. Yet, the relief requested by the appellants is not that their assessments be equalized with other comparable property within the county, but that their assessments be automatically lowered to the assessments existing for the previous year, 1958-59. The appellants thus say, in effect, "we have been under-assessed in the past and we must continue to be under-assessed until every other piece of property is placed on the tax rolls at comparative though less than market value." Yet, from the evidence presented to the county board of equalization, it was clear that most of the residential property was valued in accordance with the reappraisal; in the southern part of the county where the appellants' property is located, the valuations were increased in such amount as would equalize their value with that of similar property. Thus, it would appear that in the absence of the completed reappraisal itself, every effort was made to attain equality and uniformity. It can, therefore, be properly inferred that the final result doubtlessly closely approximated what would have been shown by the completed reappraisal, as there was no evidence that

the result [i.e., valuation of appellants' lands at 25 percent of market value] would not have obtained if the reappraisal of the entire county had been completed and the valuations determined in accordance therewith. In either event, to justify judicial interference the classification adopted must be based upon an unreasonable difference or distinction with reference to similar kinds of property.

The decisions of the various state courts that have had this and similar questions before them are not all uniform, and it would unduly lengthen this opinion to discuss them all. However, we have followed the excellent reasoning of the court faced with almost identical facts in *Citizens' Committee for Fair Property Tax.* v. *Warner* (1953), 127 Colo. 121 [254 P.2d 1005]; *Hamilton* v. *Adkins* (1948), 250 Ala. 557 [35 So.2d 183]; *Skinner* v. *New Mexico State Tax Commission* (1959), 66 N.M. 221 [345 P.2d 750]; see also *People* ex rel. *Bracher* v. *Orvis* (1921), 301 Ill. 350 [133 N.E. 787]; *May Department Stores Co.* v. *State Tax Commission* (Mo., 1958) [308 S.W.2d 748]; *Rogan* v. *County Commissioners of Calvert County* (1950), 194 Md. 299 [71 A.2d 47]).

The instant case is also analogous to *Sunday Lake Iron Co.* v. *Township of Wakefield* (1918), 247 U.S. 350 [38 S.Ct. 495, 62 L.Ed. 1154], where a reappraisal program was commenced but in one year, reassessment was completed on mining properties only. There, the Supreme Court of the United States allowed the assessment to stand even though there was an obvious but temporary inequality. The record disclosed that the following year, the taxing officials rectified the inequality and thereby overcame any apparent discrimination. The evidence here that the reassessment program was a continuing one makes the Sunday Lake case particularly pertinent.

The conclusion is inescapable that the assessor was under duty to assess all taxable property in San Mateo County, regardless of whether the reappraisal thereof had been completed; that although he was not required to await completion of reappraisal before making up his tax roll, he was under obligation, nevertheless, in the interest of uniformity, to determine his valuations in conformity with reappraisal standards insofar as this might reasonably be accomplished under the circumstances; and that, these duties having been performed, his actions in that behalf are clothed with the presumption of being correct and regular. It is equally manifest that to overcome this presumption would require a clear showing of illegality, and, in the light of the absence of any evidence to

the contrary, for all purposes here, we must assume the regularity and validity of the 1959-60 assessment roll of San Mateo County as returned by the assessor. Therefore, the completion of the reappraisal was not a prerequisite to the levy of a valid assessment on the appellants' lands for the fiscal year 1959-60.

In view of the above, we do not deem it necessary to discuss the remaining contentions of the appellants.

Judgment affirmed.

Draper, J., and Shoemaker, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 16, 1961. Gibson, C. J., did not participate therein. Peters, J., was of the opinion that the petition should be granted.